BRETT SCHUMAN (SBN 189247)
BSchuman@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: 415-733-6000
Fax: 415-677-9041

JAMES O. FLECKNER (*pro hac vice*)
jfleckner@goodwinlaw.com
DAVID ROSENBERG (*pro hac vice*)
drosenberg@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: 617-570-1000
Fax: 617-523-1231

Attorneys for Defendants
THE CLOROX COMPANY; THE EMPLOYEE
BENEFITS COMMITTEE OF THE CLOROX
COMPANY 401(k) PLAN

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| JAMES MCMANUS,<br><br>       Plaintiff,<br><br>       v.<br><br>THE CLOROX COMPANY; THE EMPLOYEE BENEFITS COMMITTEE OF THE CLOROX COMPANY 401(k) PLAN; and DOES 1 to 10 inclusive,<br><br>       Defendants. | Case No. 4:23-CV-05325-YGR<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT PURSUANT TO FED R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Date:     February 20, 2024<br>Time:     2:00 p.m.<br>Courtroom: 1 – 4th Floor<br>Judge:    Hon. Yvonne Gonzalez Rogers<br><br>Complaint filed:   October 18, 2023 |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 1

    I.    Plaintiff's Standing Arguments Fail. ................................................ 1

    II.   ERISA § 514(d) Requires Dismissal of Plaintiff's Claims Because They Impair and Conflict with the Tax Code ......................... 3

    III.  Plaintiff Otherwise Has Failed to Salvage His Claims. ..................... 6

        A.    Counts I and II Do Not State Claims for Fiduciary Breach. ....... 6

            1.    Plaintiff Has Not Adequately Pled a Breach of Fiduciary Duties. ............................................................. 6

            2.    Plaintiff Has Not Adequately Pled Defendants Were Fiduciaries With Respect to the Challenged Conduct. .................................................................. 8

                (a)    Plaintiff Challenges Non-Fiduciary Settlor Conduct. ............................................................ 8

                (b)    Defendants Did Not Exercise Sufficient Discretionary Control to be Fiduciaries. .............. 10

                (c)    Forfeited Non-Vested Contributions Are Not Plan Assets. ........................................................ 11

        B.    Count III Does Not State a Claim for Violation of the Anti-Inurement Rule. .................................................... 13

        C.    Counts IV and V Do Not State Claims for Prohibited Transactions. ........................................................... 14

        D.    Count VI Does Not State a Claim for a Failure to Monitor Fiduciaries. ......................................................... 15

CONCLUSION ................................................................................................ 15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
    953 F.2d 587 (11th Cir. 1992) ............................................................................... 13

*Alessi v. Raybestos-Manhattan, Inc.*,
    451 U.S. 504 (1981) ............................................................................................. 6

*Alexander v. United Behav. Health*,
    No. 14-5337, 2015 WL 1843830 (N.D. Cal. Apr. 7, 2015) ..................................... 9

*Asner v. SAG-AFTRA Health Fund*,
    557 F. Supp. 3d 1018 (C.D. Cal. 2021) ................................................................ 10

*CFTC v. Schor*,
    478 U.S. 833 (1986) ......................................................................................... 5, 6

*Chao v. Anderson*,
    No. 06-433, 2007 WL 1448705 (E.D. Va. May 9, 2007) ........................................ 12

*Chao v. Hagemeyer N. Am., Inc.*,
    No. 06-1173, 2006 WL 8443663 (D.S.C. Oct. 20, 2006) ....................................... 14

*Chao v. Malkani*,
    452 F.3d 290 (4th Cir. 2006) ............................................................................... 13

*Cline v. Indus. Maint. Eng'g & Cont. Co.*,
    200 F.3d 1223 (9th Cir. 2000) ............................................................................. 12

*Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete
    Ass'ns*,
    No. 94-6123, 1996 WL 115446 (C.D. Cal. Jan. 30, 1996) ..................................... 7

*Comm'r v. Keystone Consol. Indus., Inc.*,
    508 U.S. 152 (1993) ............................................................................................ 15

*Doe v. United Behavioral Health*,
    523 F. Supp. 3d 1119 (N.D. Cal. 2021) .................................................................. 7

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013) ................................................................................ 11

*Esden v. Bank of Bos.*,
    229 F.3d 154 (2d Cir. 2000) .................................................................................. 6

*In re Halpin*,
  566 F.3d 286 (2d Cir. 2009) .................................................................................. 12

*Harris v. Amgen, Inc.*,
  573 F.3d 728 (9th Cir. 2009) ............................................................................ 2, 3

*Holland v. Arch Coal, Inc.*,
  947 F.3d 812 (D.C. Cir. 2020) ............................................................................ 13

*Holliday v. Xerox Corp.*,
  732 F.2d 548 (6th Cir. 1984) .............................................................................. 14

*IT Corp. v. Gen. Am. Life Ins. Co.*,
  107 F.3d 1415 (9th Cir. 1997) ............................................................................ 13

*LaRue v. DeWolff, Boberg & Assocs.*,
  552 U.S. 248 (2008) ............................................................................................ 12

*Maez v. Mountain States Tel. and Tel., Inc.*,
  54 F.3d 1488 (10th Cir. 1995) ............................................................................ 14

*McDaniel v. Chevron Corp.*,
  203 F.3d 1099 (9th Cir. 2000) .............................................................................. 6

*Reklau v. Merchants Nat'l Corp.*,
  808 F.2d 628 (7th Cir. 1986) ................................................................................. 6

*Rummel v. Consol. Freightways, Inc.*,
  No. 91-4168, 1992 WL 486913 (N.D. Cal. Sept. 17, 1992) ............................... 12

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020) .......................................................................................... 2

*Thondukolum v. Corteva, Inc.*,
  No. 19-3857, 2020 WL 1984303 (N.D. Cal. Apr. 27, 2020) ........................... 8, 10

*Trs. of S. Cal. Bakery Drivers Sec. Fund v. Middleton*,
  474 F.3d 642 (9th Cir. 2007) .............................................................................. 12

*In re Ullico Inc. Litig.*,
  605 F. Supp. 2d 210 (D.D.C. 2009) ...................................................................... 9

*Waller v. Blue Cross of Cal.*,
  32 F.3d 1337 (9th Cir. 1994) .............................................................................. 10

*Walsh v. Allen*,
  No. 17-784, 2022 WL 256312 (W.D. Ky. Jan. 26, 2022) ............................... 8, 12

*Walsh v. Allen*,
  No. 17-784, 2022 WL 90460 (W.D. Ky. Mar. 28, 2022) .................................... 15

*Winsor v. Sequoia Benefits & Insurance Services, LLC,*
    62 F.4th 517 (9th Cir. 2023) ................................................................................. 2

*Wright v. Or. Metallurgical Corp.,*
    360 F.3d 1090 (9th Cir. 2004) ....................................................................... 7, 15

**Statutes**

26 U.S.C. § 401(a)(4) ................................................................................................ 6

26 U.S.C. § 401(a)(8) ................................................................................................ 5

26 U.S.C. § 414(i) ..................................................................................................... 5

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) ................................................. 7

ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii) ....................................... 7

ERISA § 406(a), 29 U.S.C. § 1106(a) ................................................................... 15

ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) .......................................................... 14

ERISA § 406(b), 29 U.S.C. § 1106(b) ................................................................... 15

ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1) .......................................................... 15

ERISA § 514(d), 29 U.S.C. § 1144(d) ............................................................. 3, 4, 6

**Regulations**

26 C.F.R. § 1.401-1(b)(1)(i) (1960) ......................................................................... 3

26 C.F.R. § 1.401-7(a) (1963) ....................................................................... 3, 4, 5, 6

**Other Authorities**

DOL Adv. Op. 99-08A, 1999 WL 343509 (May 20, 1999) .................................... 11

DOL, Understanding Retirement Plan Fees and Expenses, *available at*
    http://tinyurl.com/mvu2pvbd .............................................................................. 7

2010 Newsletter of the Employee Plans Office of the IRS's Tax Exempt and
    Government Entities Division (Retirement News for Employers, Vol. 7, Spring
    2010), *available at* https://www.irs.gov/pub/irs-pdf/p4278.pdf ......................... 4

Revenue Ruling 71-313, 1971 WL 26693 (Jan. 1, 1971) ........................................ 4

Revenue Ruling 84-156, 1984 WL 262705 (Oct. 22, 1984) ................................... 4

U.S. Office of Government Ethics Public Financial Disclosure Guide, "Money
    Purchase Pension Plan" Definition, *available at* http:tinyurl.com/29xhv8cb .......................... 3

**INTRODUCTION**

Plaintiff's Opposition[1] fails to save the Complaint.  Indeed, on several issues, the Opposition fails to address *any* of the authorities Defendants cited in their Motion, essentially conceding their substance and relevance.  Moreover, throughout the Opposition, Plaintiff relies on inapposite cases that do not support the sweeping statements he makes, and his declaration that ERISA *per se* "forbids" the use of forfeitures to reduce employer contributions rather than pay plan expenses allocated to participants' accounts (Opp. at 1) is contrary to sixty years of guidance from the IRS, Congress, and DOL that explicitly permits such a practice.  His theory that plan fiduciaries must use forfeited corporate contributions to defray other participants' plan expenses— and in doing so force Clorox to contribute even more to the Plan than the over $304 million it has already paid over the past six years[2]—is without any precedent and would radically alter the way ERISA plans are funded and managed.  His claims should therefore be dismissed.

**ARGUMENT**

**I.     Plaintiff's Standing Arguments Fail.**

Plaintiff has not met his burden to establish an injury-in-fact or that any such injury is likely to be redressed by a favorable decision and, therefore, cannot demonstrate standing.

*First*, Plaintiff cannot show an injury-in-fact because he concedes that the Plan does not provide an entitlement to have his account expenses paid by forfeitures (or any other corporate contributions), but rather allows the Committee to use forfeitures in any of three ways.  Opp. at 3; Mot. at 8.  Plaintiff asserts that the Committee's decision to not confer on him additional benefits beyond those required by the Plan (here, the benefit of corporate-paid expenses) caused him injury in the form of increased Plan expenses, but cites no authority supporting this position.  Opp. at 3–

---

[1] ECF No. 27.  Unless otherwise stated, capitalized terms have the meaning ascribed to them in Defendants' Motion to Dismiss the Complaint (the "Mot.", ECF No. 24).

[2] The Plan's public filings disclose employer contributions by Clorox of the following amounts: $53,236,091 in 2022, $54,314,313 in 2021, $59,616,158 in 2020, $47,590,016 in 2019, $45,601,646 in 2018, and $43,889,315 in 2017.  *See* 2022 Plan 5500 at MTD135, Rosenberg Decl. Ex. 3; 2021 Plan 5500 at MTD178, Rosenberg Decl. Ex. 4; 2020 Plan 5500 at MTD220, Rosenberg Decl. Ex. 5; 2019 Plan 5500 at MTD260, Rosenberg Decl. Ex. 6; 2018 Plan 5500 at MTD301, Rosenberg Decl. Ex. 7; 2017 Plan 5500 at MTD341, Rosenberg Decl. Ex. 8. Plaintiff did not object to Defendants' Request for Judicial Notice, ECF No. 26, attaching these and other materials.

1  4.  Nor do Defendants' cited authorities help him.  *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615

2  (2020), concerned allegations that the at-issue plan had suffered $750 million in losses, but the

3  Supreme Court still found the plaintiffs lacked standing where, like here, they had received all

4  benefits they were "legally and contractually entitled to receive" under the plan.  *Id.* at 1618–19.

5  *Winsor v. Sequoia Benefits & Insurance Services, LLC*, 62 F.4th 517 (9th Cir. 2023), held that the

6  plaintiffs lacked standing not just because they could not demonstrate that the defendant's actions

7  caused them to pay higher out-of-pocket costs, but also because, citing *Thole*, they had received all

8  of the benefits promised by the plan and instead sued to receive additional amounts.  *Id.* at 528.

9      **Second,** even if Plaintiff can demonstrate a sufficient injury, he cannot establish that any

10  such injury would be redressed by the relief he seeks—*i.e.*, payment to the Plan by Defendants of

11  an amount equal to the forfeitures.  Indeed, although Plaintiff speculates that "[a]ny remedial order

12  would likely direct the Committee to use the disgorged funds to restore the expense deductions

13  found to have been unlawfully charged to Plaintiff's and other participants' accounts," (Opp. at 5),

14  he has explicitly not sought that relief in the Complaint.  Compl. at 20 (Prayer for Relief).  As the

15  Plan's public filings demonstrate, "[t]he Company pays all administrative expenses except for

16  certain investment fees and loan fees, which are deducted from the affected participant's account.

17  Quarterly recordkeeping fees are also deducted from participants' accounts."[3]  The authority cited

18  by Defendants (which Plaintiff does not address) establishes that any injury is not likely to be

19  redressed where funds can be used under a plan in several ways besides specifically paying

20  participants' costs and, therefore, what would happen to additional funds after being paid into the

21  plan remains conjecture.  Mot. at 9.

22      Nor does *Harris v. Amgen, Inc.*, 573 F.3d 728 (9th Cir. 2009), support Plaintiff.  There,

23  unlike here, the plaintiff sued alleging that personal account balances had been diminished by the

24  fiduciaries' poor investment decisions and sought to recover losses caused by those decisions.  *Id.*

25  at 732–33.  The Ninth Circuit held "there is no lack of redressability **merely** because a plaintiff's

26  recovery under Section 502(a)(2) might first go to the defined contribution plan rather than

27

28  [3] *E.g.*, 2022 Plan 5500 at MTD155, Rosenberg Decl. Ex. 3.

Defendants' Reply In Support of Their Motion to            Case No. 4:23-CV-05325-YGR
Dismiss Class Action Complaint

2

1   directly to the plaintiff." *Id.* at 736 (emphasis added).  But this is not what Defendants argue here;

2   Defendants argue instead that Plaintiff cannot establish redressability where the Plan Document

3   provides that forfeitures can be used in several ways, a situation not addressed in *Harris*.  Indeed,

4   even an order requiring Defendants to use forfeitures to pay Plan expenses could simply result in

5   Defendants lawfully using the amounts to pay Plan expenses otherwise paid by Clorox, with no

6   impact on Plaintiff's or other participants' Plan accounts.

7   **II.      ERISA § 514(d) Requires Dismissal of Plaintiff's Claims Because They Impair and
8             Conflict with the Tax Code.**

9         All of Plaintiff's claims must be dismissed because they impair and conflict with the tax

10  code, including its requirements that forfeitures (i) can be used to reduce employer contributions

11  and (ii) cannot be used to increase benefits beyond those set forth in the plan.  Mot. at 10–14.  In

12  response, Plaintiff contends first that 26 C.F.R. § 1.401-7(a) does not apply to the Plan, but he is

13  wrong.  However, even if Plaintiff is correct that that the Plan falls outside that regulation and thus

14  is not ***required*** to use forfeitures to reduce employer contributions, his claims must still be

15  dismissed under ERISA § 514(d), 29 U.S.C. § 1144(d), because, as his cited authority

16  acknowledges, the tax code unquestionably ***permits*** such usage, whereas Plaintiff's interpretation

17  of ERISA would ***preclude*** such usage.

18        ***First***, contrary to Plaintiff's arguments (Opp. at 6–7), 26 C.F.R. § 1.401-7(a) applies to

19  defined contribution plans like the Plan.  By its terms, 26 C.F.R. § 1.401-7(a) applies to "qualified

20  pension plans," and, as Plaintiff alleges in his Complaint, the Plan is a "defined contribution . . .

21  employee ***pension*** benefit plan."  26 C.F.R. § 1.401-7(a) (1963); Compl. ¶ 4 (emphasis added).

22  Despite this allegation, Plaintiff points to 26 C.F.R. § 1.401-1(b)(1)(i)'s definition of "pension

23  plan" to argue that the IRS's forfeiture regulation does not apply here because, as he claims, the

24  definition of "pension plan" includes only "defined benefit plan[s]."  However, the regulation's

25  definition of "pension plans" is not limited to such plans.  Instead, it explicitly also includes

26  money purchase pension plans, which are a type of defined contribution plan.  26 C.F.R. § 1.401-

27  1(b)(1)(i) (1960); U.S. Office of Government Ethics Public Financial Disclosure Guide, "Money

28  Purchase Pension Plan" Definition, http://tinyurl.com/29xhv8cb ("A money purchase pension plan

1    is a type of defined contribution plan in which an employer makes fixed contributions to a tax-

2    deferred retirement account.").

3           Indeed, Plaintiff's position that 26 C.F.R. § 1.401-7(a) does not apply to defined

4    contribution plans like the Plan is contrary to IRS authority applying that regulation to such plans.

5    For example, a 2010 IRS publication regarding the rules applicable to forfeitures in defined

6    contribution plans described 26 C.F.R. § 1.401-7(a) as one such rule, without any distinction

7    drawn between profit sharing or other types of defined contribution plans.  2010 Newsletter of the

8    Employee Plans Office of the IRS's Tax Exempt and Government Entities Division at 4

9    (Retirement News for Employers, Vol. 7, Spring 2010), *available at* https://www.irs.gov/pub/irs-

10   pdf/p4278.pdf ("2010 Newsletter"); *see also* Revenue Ruling 84-156, 1984 WL 262705, at *1

11   (Oct. 22, 1984) (applying 26 C.F.R. § 1.401-7(a) to a money purchase pension plan).

12          Further, Plaintiff argues alternatively that 26 C.F.R. § 1.401-7(a) does not apply because it

13   was "rendered defunct by the passage of ERISA."  Opp. at 7.  But the IRS has continued to apply

14   26 C.F.R. § 1.401-7(a) to defined contribution plans after the passage of ERISA, including at least

15   in 1984 and 2010, demonstrating that the regulation remains valid as to at least those plans.  2010

16   Newsletter at 4; Revenue Ruling 84-156, 1984 WL 262705, at *1 (Oct. 22, 1984).

17          ***Second,*** even if Plaintiff were correct that (i) the Plan is a profit sharing plan for purposes

18   of 26 C.F.R. § 1.401-1, (ii) 26 C.F.R. § 1.401-7(a) does not explicitly address forfeitures under

19   such plans, and/or (iii) 26 C.F.R. § 1.401-7(a) was rendered defunct by the passage of ERISA

20   (which it was not), his claims would ***still*** impair the tax code's approach to forfeitures and,

21   therefore, must be dismissed under ERISA § 514(d).  As even Plaintiff's cited authority

22   acknowledges, the IRS has since 1971 interpreted the tax code and tax regulations beyond 26

23   C.F.R. § 1.401-7(a) to mean that "profit-sharing and stock bonus plans may provide that

24   forfeitures be used to reduce employer contributions that otherwise would be required under the

25   contribution formula contained in the plan."  Revenue Ruling 71-313, 1971 WL 26693, at *1 (Jan.

26   1, 1971).  Therefore, Plaintiff's claims still fail under ERISA § 514(d) because they improperly

27   seek to turn conduct that the IRS has deemed legal under the tax code for over half a century into

28   *per se* violations of ERISA.  Had Congress intended the result Plaintiff seeks when it amended 26

1    U.S.C. § 401(a)(8) as Plaintiff suggests (Opp. at 7), Congress could have explicitly barred defined

2    contribution plans from using forfeitures to reduce employer contributions or mandated that they

3    use them to pay participant expenses, when enacting the Tax Reform Act of 1986.  Instead,

4    Congress chose to do just the opposite and expressly allowed them to be used to reduce employer

5    contributions.  Mot. at 12;[4] *see CFTC v. Schor*, 478 U.S. 833, 846 (1986) ("[W]hen Congress

6    revisits a statute giving rise to a longstanding administrative interpretation without pertinent

7    change, the congressional failure to revise or repeal the agency's interpretation is persuasive

8    evidence that the interpretation is the one intended by Congress." (marks omitted)).

9         ***Third,*** Plaintiff has cited no authority that would permit—let alone require—a defined

10   contribution plan to use forfeitures to increase individual benefits beyond those established in the

11   Plan Document by, for example, paying their share of Plan expenses.  Plaintiff cites 26 U.S.C.

12   § 414(i)'s language that defined contribution plans can include "forfeitures of accounts of other

13   participants which may be allocated to such participant's account." Opp. at 7.  Defendants agree

14   that the tax code allows forfeitures to be allocated to other participant's accounts, as they were

15   here.  But 26 U.S.C. § 414(i)'s explicit language does not permit forfeitures to be used to increase

16   that individual's benefits, and Plaintiff cites no authority interpreting it as such.  Nor is there any

17   conflict between this portion of 26 U.S.C. § 414(i) and 26 C.F.R. § 1.401-7(a)'s requirement that

18   forfeitures "must not be applied to increase the benefits any employee would otherwise receive

19   under the plan"; 26 U.S.C. § 414(i) merely acknowledges that in defined contribution plans

20   participants have individual accounts, but still does not permit the allocation of forfeitures Plaintiff

21   seeks here.  Indeed, by not disturbing at least this portion of 26 C.F.R. § 1.401-7(a) when drafting

22   26 U.S.C. § 414(i), Congress has indicated that it does not intend forfeitures to be used in defined

23   contribution plans to increase a participant's benefits.  *See Schor*, 478 U.S. at 846.[5]

24   _____

25   [4] Plaintiff claims only that the legislative history cited in Mot. at 12 "is not law," (Opp. at 7 n.1),
     but Defendants never argued that the legislative history itself was law but instead rather evidence
26   of Congress's "understanding" of the law with respect to forfeitures, as even Plaintiff concedes
     (*id.*), and therefore its intent in drafting the Tax Reform Act of 1986, which made some changes to
27   rules concerning forfeitures but otherwise left the existing interpretations in place.

     [5] Fundamentally, Plaintiff appears to conflate the concept of whether forfeitures can be used to
28   increase benefits and whether they can be applied to a different individual account.  Defendants do
     not assert a prohibition on the allocation of forfeitures from one individual account to another.

1

**III.    Plaintiff Otherwise Has Failed to Salvage His Claims.**

2

    **A.    Counts I and II Do Not State Claims for Fiduciary Breach.**

3

        **1.    Plaintiff Has Not Adequately Pled a Breach of Fiduciary Duties.**

4

Plaintiff has failed to establish that he has adequately pled a breach of fiduciary duties.

5

Although Plaintiff argues that compliance with 26 C.F.R. § 1.401-7(a) and the decades of

6

congressional and DOL guidance permitting forfeitures to be used to reduce employer

7

contributions "is not a defense to [his] ERISA claims" (Opp. at 16), none of the authorities he cites

8

says as much.  Nor could they; the Court can and should dismiss his claims as failing to plausibly

9

allege breach of fiduciary duties because allegations that Defendants merely followed a long-

10

standing and long permitted practice—expressly allowed by the Plan Document—do not permit an

11

inference of disloyalty or imprudence.  Mot. at 12–14; *see also Alessi v. Raybestos-Manhattan,*

12

*Inc.*, 451 U.S. 504, 517–21 (1981) (examining Treasury regulation in determining whether ERISA

13

prohibits certain conduct).  Two decisions Plaintiff cites held that a plaintiff may not sue under

14

ERISA on the theory that a plan violated IRS Revenue Ruling 79-90 or 26 U.S.C. § 401(a)(4).

15

*McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1117–18 (9th Cir. 2000); *Reklau v. Merchants Nat'l*

16

*Corp.*, 808 F.2d 628, 631 (7th Cir. 1986).  Another only held that an IRS determination letter,

17

which under the tax code "may not be used or cited as precedent," is not a total "shield . . . from

18

liability" on an ERISA claim.  *Esden v. Bank of Bos.*, 229 F.3d 154, 175–76 (2d Cir. 2000)

19

(quoting 26 U.S.C. § 6110(k)(3)).  That case did not concern a regulation, congressional guidance,

20

DOL advisory opinion, or IRS revenue ruling, said nothing about whether a determination letter

21

can demonstrate the implausibility of allegations that conduct permitted by the IRS violates

22

ERISA, and did not consider the impact of ERISA § 514(d).  *Id.*  Although Plaintiff asserts that

23

"section 401(a) of the Internal Revenue Code . . . has no application to ERISA" (Opp. 16), he

24

ignores that the ***very purpose*** of the Plan is to offer investments in a trust exempt from taxation.[6]

25

Plaintiff's argument that ERISA ***only*** permits forfeitures to be used to pay the portion of

26

---

27

What tax law precludes is the use of forfeitures to effectively increase benefits.  While Plaintiff
argues that he does not seek to have increased benefits (Opp. at 18 n.6), that is precisely the effect
of the relief he seeks in having free Plan services.

28

[6] 2022 Plan 5500 at MTD159, Rosenberg Decl. Ex. 3.

1  Plan expenses allocated to participants' accounts, and that Defendants had to disregard any Plan

2  language to the contrary (Opp. at 16–18), therefore fails because it is not a violation of ERISA to

3  follow a long-standing practice that has been blessed by the IRS, Congress, and the DOL.

4  Moreover, Plaintiff cites no authority that ERISA § 404(a)(1)(A)(ii), 29 U.S.C.

5  § 1104(a)(1)(A)(ii), requires forfeitures to be used to pay his and other Plan participants' share of

6  Plan expenses.  Taken to its logical conclusion, Plaintiff's reading of ERISA would require a

7  fiduciary to use all contributions to pay all plan expenses, even expenses to service loans made

8  from individual plan accounts, regardless of a plan's terms.  But courts read ERISA

9  § 404(a)(1)(A), the "exclusive purpose" provision, to require only that a fiduciary provide those

10  benefits specified in a plan document, as opposed to a license to override a plan's terms to provide

11  any conceivable benefit or pay any conceivable expense:  "ERISA 'does not create an exclusive

12  duty to maximize pecuniary benefits.'"  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100

13  (9th Cir. 2004) (affirming dismissal) (quoting *Collins v. Pension & Ins. Comm. of S. Cal. Rock*

14  *Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998)).[7]  The DOL

15  recognizes that to be the case, explaining that 401(k) plan participants are often charged with and

16  must pay their share of plan administrative and service expenses, a practice that would be a *per se*

17  breach of ERISA if Plaintiff's interpretation of ERISA § 404(a)(1)(A(ii) were correct.[8]

18  Accordingly, Plaintiff's cases are beside the point.  For example, ERISA § 404(a)(1)(A)(ii)

19  does not diverge from the Plan language the way that the Mental Health Parity and Addiction

20  Equity Act ("Parity Act") did in *Doe v. United Behavioral Health*, 523 F. Supp. 3d 1119 (N.D.

21  Cal. 2021), because ERISA does not require the use of forfeited corporate contributions to pay

22  individual account expenses, whereas the Parity Act expressly required certain benefits under

23  certain conditions.  Just because Plaintiff feels he would be better off if his administrative

24  expenses were paid by forfeitures does not mean that ERISA requires that they be used in such

---

[7] Plaintiffs' attempt (Opp. at 18 n.6) to distinguish *Collins* fails.  *Collins* addressed the same
exclusive purpose section of ERISA at issue here.  *Collins*, No. 94-6123, 1996 WL 115446, at *3
(C.D. Cal. Jan. 30, 1996), *aff'd*, 144 F.3d 1279.

[8] *See* DOL, Understanding Retirement Plan Fees and Expenses at 2–3, *available at*
http://tinyurl.com/mvu2pvbd (administrative fees are often "allocated among individual accounts"
and service fees "may be charged separately to the accounts of those who" use such services).

---

Defendants' Reply In Support of Their Motion to
Dismiss Class Action Complaint

Case No. 4:23-CV-05325-YGR

manner as Plaintiff's own case, *Thondukolum v. Corteva, Inc.*, No. 19-3857, 2020 WL 1984303, at *3 (N.D. Cal. Apr. 27, 2020), explains.  Indeed, one of Plaintiff's own authorities found that the use of forfeitures to reduce employer contributions could be an ERISA violation only where the plan document ***required*** that forfeitures be used to pay plan expenses, further demonstrating the primacy of the plan language and the fallacy of Plaintiff's argument that the exclusive purpose rule requires the provision of more benefits or defraying of more expenses than set forth in the Plan.  *Walsh v. Allen*, No. 17-784, 2022 WL 256312, at *1, 3 (W.D. Ky. Jan. 26, 2022).

Because ERISA does not require that forfeitures be used to pay participants' plan expenses absent plan language requiring such an approach, Plaintiff's argument that presumes the contrary (Opp. at 17–18) is incorrect.[9]  Indeed, holding otherwise would mean that any time there is a forfeited contribution in any ERISA plan, such amounts must be used to pay a participant's plan expenses regardless of the Plan's language and the company's intent in establishing a plan, which is a radical departure form how plans are managed and funded in practice.

### 2. Plaintiff Has Not Adequately Pled Defendants Were Fiduciaries With Respect to the Challenged Conduct.

#### (a) Plaintiff Challenges Non-Fiduciary Settlor Conduct.

Plaintiff has failed to rebut Defendants' arguments that they were not fiduciaries because they acted as settlors when deciding what benefits to provide and how to provide them.

He acknowledges that "Clorox's decision to allow the Committee to choose how to allocate forfeitures was a plan design and thus settlor decision" and states that he therefore "does not challenge any . . . decision by Clorox regarding what benefits to provide or how to fund them," which he admits concern "plan design."  Opp. at 12–13.  Counts I and II, as well as Counts IV and V, must therefore be dismissed at least as to Clorox because Plaintiff has admitted that Clorox was not acting as a fiduciary when taking the at-issue conduct.

Although Plaintiff then argues that he can nonetheless draw a distinction between the

---

[9] In response to Defendants' argument that his theory would additionally require Defendants to violate the Plan Document, which states that amounts used to restore forfeited accounts "will be drawn first" from forfeitures (Mot. at 15), Plaintiff mischaracterizes the Plan Document and states without any support that the restoration of forfeited accounts "never occurred during the Plan years at issue here" (Opp. at 14).  He therefore likewise fails to rebut this argument.

Committee and Clorox (Opp. at 12), his admission that determining what benefits to provide and how to fund them are plan design decisions is also fatal to his claims against the Committee. Indeed, Plaintiff elsewhere asserts that the effect of his claim against all Defendants would be to increase "Clorox's employer contributions" to the Plan beyond the tens of millions it provides each year.  Opp. at 21.  Yet he does not address *any* of the authorities cited by Defendants on this point that held that decisions that would effectively alter the sponsoring corporation's funding obligations are plan design decisions regardless of who makes them or whether the at-issue amounts have already been paid to a plan account, but relies instead on mischaracterizations of the Plan Document and inapposite authority.

For example, Plaintiff incorrectly argues that the Plan Document provides that the Committee cannot act as the Plan's settlor.  Opp. at 12.  While the Plan Document states that the Committee will "administer and interpret the Plan," it does not limit the Committee's powers to those, and other portions of the Plan Document state that Clorox may delegate its settlor powers to either a committee of its board of directors "or as otherwise determined" by its board, including therefore to the Committee.[10]  As several provisions of the Plan Document make clear, the Committee was delegated settlor authority to make decisions regarding the amount of contributions, including as those amounts relate to forfeitures.[11]  Plaintiff's authorities are instead based on different circumstances where entities, including one external, third-party administrator unlike the internal Committee, were not delegated responsibility with respect to settlor functions.[12]

Plaintiff additionally argues that the Committee was not making Plan design decisions when making decisions regarding how to allocate forfeitures.  Opp. at 12–13.  However, because Plaintiff argues that the Committee should have made a different allocation decision, to confer different benefits and cost obligations on him and also force Clorox to make additional employer contributions, he effectively concedes that the Committee's actions were quintessentially settlor in

---

[10] Plan Document at MTD045–46 (§ 15.02 & Art. XVI), Rosenberg Decl. Ex. 1.

[11] *See, e.g., id.* at MTD016–17, 19–20, 30 (§§ 5.01(a)(i) & (v), 5.02(a)(iv), 5.04, 8.02(a)(i)).

[12] *Alexander v. United Behav. Health*, No. 14-5337, 2015 WL 1843830, at *7 (N.D. Cal. Apr. 7, 2015) (third-party administrator not a settlor); *In re Ullico Inc. Litig.*, 605 F. Supp. 2d 210, 218 (D.D.C. 2009) (administrator not a settlor where it lacked authority to amend the plan).

1   nature.  Mot. at 17.  Further, Plaintiff's authorities are again inapposite.  Plaintiff states that

2   *Thondukolam*, is instructive, and here Defendants agree.  That ruling, which granted a motion to

3   dismiss, held that decisions regarding how to fund a plan were settlor in nature.  2020 WL

4   1984303, at *2.  Plaintiff relies on a portion of the holding regarding "allocation of funds within

5   the [p]lan," but there the Court found such decisions to not be settlor in nature only where

6   plaintiffs alleged that "defendants' decision regarding fund allocation was separate from the

7   decision regarding the amount of money to contribute to fund the [p]lan."  *Id.* at *3.  Here, by

8   contrast, Plaintiff pleads and argues that the two were linked; he asserts that the Committee should

9   have allocated forfeitures to pay Plan participants' expenses rather than to reduce employer

10  contributions, so that Clorox would then be required to pay additional amounts to the Plan.

11  Compl. ¶¶ 23–32; Opp. at 2 (claiming that the allocation of forfeitures to reduce employer

12  contributions "decreas[ed] the amount of employer contributions the Plan otherwise would have

13  received"); *id.* at 19–21 (referring to the contributions as "an employer's debts to the plan").[13]

### (b)   Defendants Did Not Exercise Sufficient Discretionary Control to be Fiduciaries.

16         Plaintiff similarly fails to rebut Defendants' argument that, even if the at-issue decisions

17  were not settlor in nature, he has failed to allege that Defendants acted with sufficient discretion to

18  be fiduciaries.  Plaintiff again does not address ***any*** of the authorities Defendants cited.

19         Rather, Plaintiff acknowledges that the Plan Document limited the Committee's choice as

20  to how to allocate forfeitures to only three options.  Opp. at 14.  He nonetheless asserts—contrary

21  to the decisions Defendants cited that he ignores—that this limited discretion is sufficient to

22  confer fiduciary status on the Committee.  He cites only one decision in support, a Third Circuit

23  decision that he interprets as holding that one is a fiduciary whenever the "plan or policy permits

24  some leeway in how an act is performed."  *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406,

25  422 (3d Cir. 2013).  That case, however, was one in which the defendant conceded it acted as a

---

[13] Plaintiff's other cited authorities challenged very different types of decisionmaking.  *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342 (9th Cir. 1994) ("choice of an annuity provider"); *Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1035 (C.D. Cal. 2021) (misrepresentations concerning a plan merger).

1   fiduciary, and where it had much more discretion than the Committee did here:  the case

2   concerned a challenge to the form of payment of benefits elected by the defendant, and the at-issue

3   plan provided no guidelines or other framework as to the form of payment.  *Id.* at 411, 422.

4   *Edmonson* therefore concerned a situation where the defendant had far more than "some leeway";

5   it had almost unlimited discretion.  Defendants' discretion here is much more circumscribed, and

6   under the authority Defendants cited (including a Ninth Circuit decision) such limited discretion

7   does not give rise to fiduciary status.  *See* Mot. at 18–19.

8                    **(c)    Forfeited Non-Vested Contributions Are Not Plan Assets.**

9             Finally, Plaintiff fails to establish that the forfeited, non-vested employer contributions

10   were ERISA plan assets, and that, therefore, Defendants were fiduciaries with respect to any

11   management or disposition of such amounts.

12             Plaintiff suggests that any amount paid into the Plan's trust is a Plan asset.  Opp. at 10.

13   But the authorities he cites do not go so far.  For example, in language he omits from the

14   Opposition, a DOL advisory opinion he cites agrees with Defendants that plan assets are only

15   those over which the plan has a "beneficial interest" and that

16             whether a plan has acquired a beneficial interest in definable assets depends,
             largely, on whether the plan sponsor has expressed the intent to grant such a
17             beneficial interest or has acted or made representations sufficient to lead
             participants and beneficiaries of the plan reasonably to believe that such funds
18             separately secure the promised benefits or are otherwise plan assets.

19

20   DOL Adv. Op. 99-08A, 1999 WL 343509, at *3 (May 20, 1999).  Whether assets are held in a

21   plan's trust therefore is not dispositive as to whether the plan has a beneficial interest in them.

22   Plaintiff does not contest that the Plan's documents clearly established and disclosed to the Plan's

23   participants that they have no interest in such amounts until and unless they are reallocated to their

24   own Plan accounts, which they never were.  Mot. at 20.

25             The decisions Plaintiff cites at Opp. at 10 are distinguishable because they concern

26   amounts paid into a plan for benefits where there was no indication that the amounts represented

27   non-vested benefits like the forfeitures here.  *E.g.*, *Trs. of S. Cal. Bakery Drivers Sec. Fund v.*

28   *Middleton*, 474 F.3d 642, 646 (9th Cir. 2007) (death, accidental death, and dismemberment

---

1    benefits); *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 250 (2008) (participants' own

2    contributions to a 401(k) plan as opposed to employer contributions).  Two held only that

3    employer contributions cannot become plan assets at least until they are paid into a trust, and did

4    not hold (as Plaintiff suggests) that all employer contributions (including non-vested ones) paid

5    into a plan's trust are plan assets.  *See Cline v. Indus. Maint. Eng'g & Cont. Co.*, 200 F.3d 1223,

6    1234 (9th Cir. 2000); *In re Halpin*, 566 F.3d 286, 290 (2d Cir. 2009).

7         The decisions Plaintiff cites at Opp. at 11 are similarly inapposite.  In one, unlike here, the

8    plan provided that "[f]orfeitures **will** be used to pay [p]lan expenses" rather than be allocated to

9    other uses, and so the plan document itself established that the forfeitures secured promised

10   benefits or were otherwise plan assets.  *See Allen*, 2022 WL 256312, at *1, 3 (emphasis added).  In

11   the other, where the defendant did not contest liability or plan asset status, the amounts in the

12   forfeiture account represented employee, not employer, contributions; unlike here, the employer

13   there "contributed nothing to the [forfeited] assets."  *Chao v. Anderson*, No. 06-433, 2007 WL

14   1448705, at *1–2 (E.D. Va. May 9, 2007).

15        Finally, Plaintiff fails to meaningfully rebut the decisions cited by Defendants.  For

16   example, Plaintiff claims two decisions are inapplicable because they concerned unpaid

17   contributions, but thosee decisions also turned on the fact that participants' rights to the at-issue

18   amounts had not vested.  Mot. at 20 (citing *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th

19   Cir. 1986) and *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 647 (8th Cir. 2007)).

20   While Plaintiff argues that *Rummel v. Consol. Freightways, Inc.*, No. 91-4168, 1992 WL 486913,

21   at *6 (N.D. Cal. Sept. 17, 1992), did not directly address plan asset status (Opp. at 11 n.3), he does

22   not contest—nor could he—that the court there dismissed an ERISA fiduciary claim seeking to

23   impose liability for not providing plaintiffs with unallocated, unaccrued amounts held in a plan's

24   suspense account.  Plaintiff does not even address the fourth case Defendants cited, which

25   similarly held that actions taken with respect to "contingent and nonvested benefits" do not

26   implicate ERISA's fiduciary duties.  Mot. at 20 (quoting *Cinelli v. Sec. Pac. Corp. Supplemental*

27

28

1    *Grp. Life Ins. Plan*, No. 93-450, 1993 WL 795226, at *7 (N.D. Cal. Nov. 22, 1993)).[14]

2           **B.      Count III Does Not State a Claim for Violation of the Anti-Inurement Rule.**

3           ERISA's anti-inurement rule is violated only where the plaintiff alleges a reversion of plan

4    assets to the plan sponsor.  Mot. at 21–22; *see also Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan*

5    *Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) (to state an anti-inurement claim, a

6    plaintiff must allege "a removal of plan assets for the benefit of the plan sponsor or anyone other

7    than the plan participants").  Plaintiff does not allege that any amounts owed to the Plan reverted

8    to Clorox or were otherwise removed from the Plan by Clorox, nor does he address any of

9    Defendants cases.  Opp. at 19–21.  His contrary arguments fail.

10          Plaintiff chiefly bases his argument (Opp. at 19–20) on *Holland v. Arch Coal, Inc.*, 947

11   F.3d 812 (D.C. Cir. 2020).  *Holland* addressed the Coal Industry Retiree Health Benefit Act of

12   1992, a statute passed "to stabilize [health care] plan funding" for coal miners given that "more

13   and more coal operators abandoned" plans, in the context of a defendant who sought to avoid

14   providing additional security required when a successor entity filed bankruptcy.  947 F.3d at 814,

15   820–21.  *Holland*'s holding is beside the point here where Plaintiff makes no allegation that the

16   defined contributions required by this Plan were not made, nor could he.  At Opp. at 20–21,

17   Plaintiff cites other inapposite decisions to support a theory that forfeitures cannot be used to

18   forgive "employer debts" to the Plan; those cases address companies that allegedly failed to make

19   required contributions to plans, a claim that Plaintiff does not make here.  *E.g.*, *Chao v. Malkani*,

20   452 F.3d 290, 291–92, 298 (4th Cir. 2006) (plan sponsor "stopped making payments at all" to the

21   plan and "refus[ed] to make its annual contributions" to the plan).[15]

22          Not only are Plaintiff's cases inapposite, but courts have routinely rejected the conclusion

---

[14] Plaintiff's argument and the decisions he cites (Opp. at 14–15) all assume that the at-issue amounts were Plan assets, which they were not.  The one Ninth Circuit decision not otherwise addressed herein, *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1418 (9th Cir. 1997), involved claims brought by the plan itself against its administrator, alleging that the administrator paid benefits to an ineligible child of an employee, in violation of the plan's terms—whereas here, Plaintiff does not assert that the Plan precluded the specific action he challenges.

[15] Plaintiff asserts that the Plan requires a certain amount of "new money"—a term not used anywhere in the Plan—to be contributed each year.  Opp. at 21.  However, Plaintiff does not, nor could he, argue that Clorox failed to make any required contributions to his or any other participant's Plan account.

that Plaintiff seeks to draw from them.  For example, in *Holliday v. Xerox Corp.*, the plaintiff alleged as Plaintiff does here that the plan sponsor had violated ERISA's anti-inurement provision by using funds in one plan account to offset the amounts it owed as to a different account, which "had the effect of reducing the amount of money [the defendant] ha[d] to contribute" to the plan. 732 F.2d 548, 550–51 (6th Cir. 1984).  The Sixth Circuit rejected these allegations, stating that it found "no violation of either the letter or the spirit of ERISA" in such conduct and that this transfer and resulting reduction of the company's obligations was not a "prohibited benefit" under ERISA.  *Id.* at 551–52.  The Tenth Circuit similarly has held that ERISA's anti-inurement provision is not violated where the plaintiff alleges "no . . . reversion, diversion, or any other sort of payment of surplus assets" to the plan sponsor, but rather contends only that the plan sponsor should have allocated surplus plan assets to one purpose rather than another.  *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995).

> **C.     Counts IV and V Do Not State Claims for Prohibited Transactions.**

Plaintiff fails to establish that he has pled a relevant transaction under ERISA's prohibited transaction provisions.

Plaintiff argues that he has pled a relevant transaction because he challenges "'exchanges' of property between the Plan and Clorox."  Opp. at 22.  But nowhere does Plaintiff actually allege any exchange of property between the Plan and Clorox.  Rather, throughout the Opposition he concedes that he challenges decisions to "reallocate[] [forfeitures]" within the Plan, after those amounts have been paid into the Plan, "to offset [Clorox's] own contributions instead of defraying plan expenses borne by participants."  *E.g.*, Opp. at 1, 13.  Decisions to relocate amounts within a plan are the sort of intra-plan transactions that are not prohibited transactions because they are (i) not commercial bargains, and (ii) are between the plan and itself rather than the plan and a party in interest or a fiduciary.  Mot. at 23; *see also Chao v. Hagemeyer N. Am., Inc.*, No. 06-1173, 2006 WL 8443663, at *9 (D.S.C. Oct. 20, 2006) (dismissing ERISA § 406(a)(1) claims premised on "exchanges or 'reallocations' between accounts" within a pension plan).

Because Plaintiff challenges only intra-plan transactions, his argument that Defendants' authorities "are inapposite" because they involved intra-plan transactions is incorrect.  Plaintiff

1   otherwise cites **no** ERISA decisions to support his point, and does not address the Supreme Court

2   and Ninth Circuit authority Defendants cited in the Motion at 23.  Instead, despite his arguments

3   elsewhere in the Opposition that the tax code is inapplicable to ERISA, he cites a decision

4   interpreting a provision of the tax code.  Opp. at 22.  In any event, that decision concerned

5   allegations that the defendant had contributed five truck terminals to the plan's trust, and whether

6   that **transaction** was a "sale or exchange" under the relevant provision of the tax code.  *Comm'r v.*

7   *Keystone Consol. Indus., Inc.*, 508 U.S. 152 (1993).  Plaintiff has alleged no similar sale or

8   exchange between Defendants and the Plan.  Otherwise, he cites a DOL brief in which the DOL

9   argued the court should grant it summary judgment on a prohibited transaction claim, but fails to

10  acknowledge that the court rejected the DOL position and **denied** its motion for summary

11  judgment.  *Allen*, 2022 WL 90460, at *2 (W.D. Ky. Mar. 28, 2022).

12         Finally, with respect to Count V alleging a violation of ERISA § 406(b)(1), 29 U.S.C.

13  § 1106(b)(1), Plaintiff primarily argues that this claim should proceed even if he has failed to

14  allege a transaction because ERISA § 406(b)(1) does not require such an allegation.  Not so.  As

15  the Ninth Circuit held in *Wright*—a decision Plaintiff does not address in his discussion of Counts

16  IV and V—prohibited transaction claims must be dismissed where a "[p]laintiff[] fail[s] to identify

17  any transaction that falls within § 1106(a)(1) **or (b)**."  360 F.3d at 1101 (emphasis added).  The

18  requirement that Plaintiff identify a relevant transaction therefore applies equally to ERISA

19  § 406(a) and (b) under binding Ninth Circuit law.  Plaintiff supports his point instead only with

20  out-of-Circuit authority that is contrary to *Wright*.  Opp. at 23–24.[16]

21         **D.      Count VI Does Not State a Claim for a Failure to Monitor Fiduciaries.**

22         Plaintiff admits that Count VI may only survive if he has adequately pled violations of

23  ERISA by the Committee.  Opp. at 25.  Because he has not, Count VI should be dismissed.

24                              **<u>CONCLUSION</u>**

25         For the foregoing reasons, the Complaint should be dismissed with prejudice.

26

27

28  ---
    [16] Moreover, because Plaintiff has failed to meet his threshold burden of alleging a transaction, his request for discovery relating to Count V (Opp. at 24) should be denied.

1     Dated:  February 1, 2024                    Respectfully submitted,

2                                                 By: /s/ *James O. Fleckner*
                                                  James O. Fleckner (*pro hac vice*)
3                                                 *jfleckner@goodwinlaw.com*
                                                  David Rosenberg (*pro hac vice*)
4                                                 *drosenberg@goodwinlaw.com*
5                                                 **GOODWIN PROCTER** LLP
                                                  100 Northern Avenue
6                                                 Boston, Massachusetts 02210
                                                  Telephone:  617-570-1000
7                                                 Facsimile:  617-523-1231

8
                                                  Brett Schuman (SBN 189247)
9                                                 *BSchuman@goodwinlaw.com*
                                                  **GOODWIN PROCTER** LLP
10                                                Three Embarcadero Center
                                                  San Francisco, California 94111
11                                                Tel.:  415-733-6000
                                                  Fax:  415-677-9041
12
                                                  *Attorneys for Defendants*
13                                                THE CLOROX COMPANY; THE EMPLOYEE
                                                  BENEFITS COMMITTEE OF THE CLOROX
14                                                COMPANY 401(k) PLAN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

Defendants' Reply In Support of Their Motion to                Case No. 4:23-CV-05325-YGR
Dismiss Class Action Complaint

1

## CERTIFICATE OF SERVICE

2       I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

3   United States District Court for the Northern District of California by using the CM/ECF system

4   on February 1, 2024.  I further certify that all participants in the case are registered CM/ ECF

5   users and that service will be accomplished by the CM/ECF system.

6       I certify under penalty of perjury that the foregoing is true and correct.  Executed on

7   February 1, 2024.

8                                                             */s/ James O. Fleckner*
                                                            James O. Fleckner

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28