**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES MCMANUS,<br><br>  Plaintiff,<br><br>v.<br><br>THE CLOROX COMPANY; THE EMPLOYEE BENEFITS COMMITTEE OF THE CLOROX COMPANY 401(K) PLAN; AND DOES 1 TO 10 INCLUSIVE,<br><br>  Defendants. | Case No.: 4:23-CV-05325-YGR<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 24 |

Plaintiff James McManus, a participant in The Clorox Company 401(k) Plan (the "Plan"), brings this Employee Retirement Income Security Act ("ERISA") action on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2) and (3), and Federal Rule of Civil Procedure 23 on behalf of beneficiaries of the Plan. Plaintiff brings his claims against defendants The Clorox Company ("Clorox") and The Employee Benefits Committee of the Clorox Company 401(k) Plan (the "Committee") for (i) breach of ERISA's fiduciary duties, (ii) violation of ERISA's anti-inurement provision, and (iii) engaging in prohibited transactions prohibited by ERISA.

## I.   BACKGROUND

Plaintiff challenges "defendants' reallocation of forfeited money in the Plan's trust fund to reduce its future non-elective contributions." (Dkt. No. 1 ("Compl.") ¶ 32.) He alleges that Clorox reduced its own contribution expenses, thus harming the Plan and its participants and beneficiaries, by reducing Clorox contributions that would otherwise have increased Plan assets. (*Id.*) Plaintiff contends that this practice also caused participants to incur deductions from their individual

accounts each year to cover administrative expenses that would otherwise have been covered in whole or in part by utilizing forfeited funds. (*Id.*)

The Court heard arguments on this motion on October 29, 2024. Plaintiff requested leave to amend to outline a "conflict of interest" argument that was not fully developed in the initial complaint. This order issues to narrow the scope of any further briefing.

## II.   JUDICIAL NOTICE

Defendants request judicial notice (Dkt. No. 26) to introduce the Clorox Plan document, a Plan summary description, multiple Form 5500 forms filed with the Department of Labor from 2018 to 2022, and excerpts from a conference report for the Tax Reform Act of 1986. (Dkt. No. 26.) Plaintiff does not oppose the request.

Plaintiff requests judicial notice to introduce Secretary of Labor's Memorandum in Support of Motion for Partial Summary Judgment filed on July 10, 2019 at Docket Number 46-1 in *Acosta v. Anthony C. Allen, et al.*, Case No. 3:17-cv-784-CHB (W.D. Ky.) (Dkt. No. 28.) Defendants do not oppose the request.

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Facts asserted within the documents subject to judicial notice are not the proper subject of judicial notice. *See Lee* 250 F.3d at 690.

The court takes judicial notice of the Plan's 5500 forms, the conference report for the Tax Reform Act of 1986, and the Department of Labor's brief in *Acosta v. Allen* because they are

matters of public record and not subject to reasonable dispute. The Court does not take judicial notice of the Plan document or plan summary description. The Court does, however, consider the Plan document as incorporated by reference in the complaint because it forms the basis of plaintiff's claims (*see* Compl. ¶¶ 4, 11, 12, 17, 34, 39, 45, 53), and no party contests its authenticity. *See In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

### III.   ANALYSIS

#### A.   STANDING (ALL COUNTS)

Defendants argue that plaintiff lacks Article III standing because he does not allege a failure by defendants to make any required contribution to his individual plan account, or that his account has suffered any financial harm. (Dkt. No. 24 at 8.) To establish standing, a plaintiff must demonstrate that he has (1) "suffered an injury in fact[,]" (2) "there [is] a causal connection between the injury and the conduct complained of" and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Plaintiff adequately pleads an injury in fact because he asserts that the Plan incurred expenses that defendants paid using an annual fee deducted from his individual account, rather than forfeited funds. He further alleges that defendants chose to use forfeited funds to reduce Clorox's contributions to the Plan instead of reducing the administrative expenses charged to his account. (Compl. ¶¶ 9, 18, 19, 24, 25.)

Defendants counter that the Plan provides no guarantee Clorox will pay administrative fees instead of charging them to beneficiaries like plaintiff.[1] This argument misses the mark, however. The allegedly wrongful conduct, here, involves a violation of the ERISA statute, not of the Plan. Even assuming the Plan allowed defendants to offset their contributions by indirectly charging individual plan members, plaintiff alleges that the practice violated the statute, and not only the

---

[1] Defendants cite *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), but there "the plaintiffs ha[d] not sustained any monetary injury" and therefore "ha[d] no concrete stake in this lawsuit." *Id.* at 1618–19. Defendants also cite *Winsor v. Sequoia Benefits & Insurance Services, LLC*, 62 F.4th 517 (9th Cir. 2023), which found plaintiffs had no concrete injury because their allegations failed to "demonstrate that they paid higher contributions because of Sequoia's allegedly wrongful conduct." *Id.* at 525. Such is not the case here.

3

Plan. Plaintiff, therefore, raises an injury in fact of which there is a causal connection to defendants' conduct.

Next, defendants argue that plaintiff's injury is not redressable because any recovered funds would go back to the Plan, and not to plaintiff's individual account. The Ninth Circuit has foreclosed this argument, however, holding "that there is no lack of redressability merely because a plaintiff's recovery under Section 502(a)(2) might first go to the defined contribution plan rather than directly to the plaintiff." *Harris v. Amgen, Inc*., 573 F.3d 728, 736 (9th Cir. 2009). Defendants argue that this case is distinguishable, however, because even an order requiring defendants to use forfeitures to pay Plan expenses could result in defendants using forfeitures to pay plan expenses otherwise paid by Clorox, and therefore not defray costs for plan participants. Such a conclusion would require the Court to assume facts in favor of the defendants. Here, accepting plaintiff's allegations as fact and construing the pleadings in light most favorable to him, the Court finds it likely that an order finding violations of the statute would require defendants to restore deductions that are found unlawfully charged to participant accounts. Therefore, plaintiff has standing for his claims. Therefore, defendants' motion to dismiss on this issue is **DENIED.** This issue shall not be relitigated.

### B.  IRS REGULATIONS (ALL COUNTS)

Defendants claim that Internal Revenue Service ("IRS") regulations allow the use of forfeitures to reduce employer contribution obligations. Thus, because ERISA requires that it not conflict with other laws, defendants argue that using forfeited funds to pay Plan expenses was either required, or alternatively permitted, by the ERISA statute.

More precisely, ERISA provides that "[n]othing" in ERISA "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). The allegedly conflicting IRS regulations provide:

> In the case of a trust forming a part of a qualified pension plan, the plan must expressly provide that *forfeitures arising from severance of employment, death, or for any other reason, must not be applied to increase the benefits any employee would otherwise receive under the plan* at any time prior to the termination of the plan or the complete discontinuance of employer

4

> contributions thereunder. *The amounts so forfeited must be used as soon as possible to reduce the employer's contributions under the plan.*

26 C.F.R. § 1.401-7(a) (emphasis supplied). Defendants add that a proposed Department of Treasury regulation supports their interpretation of the statute. It states:

> [T]he proposed regulation would clarify that forfeitures arising in any defined contribution plan (including in a money purchase pension plan) may be used for one or more of the following purposes, as specified in the plan: (1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms.

Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01 (proposed Feb. 27, 2023).

26 C.F.R. section 1.401-7(a), however, does not apply to defendants' Plan because the regulation applies to *pension plans* and not *profit-sharing plans*. IRS regulations distinguish the two, stating "[a] pension plan within the meaning of section 401(a)"—and as used in regulation "§ 1.401-7"—is a plan that provides for "the payment of definitely determinable benefits" (*i.e.*, a defined benefit plan). 26 C.F.R. § 1.401-1(b)(1)(i). A "profit-sharing plan," however, provides for "a definite predetermined formula for allocating the contributions to the plan" (*i.e.*, a defined contribution plan). 26 C.F.R. § 1.401-1(b)(1)(ii).

Further, as applied here, the Department of Treasury proposed regulation is of little value. First, the proposed regulation applies only to plan years beginning on or after January 1, 2024, and therefore does not apply to plaintiff's claims, which span from 2017 to 2022. *See* Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. at 12284. (*See Compl.* ¶¶ 26-31.) Second, an IRS revenue ruling from closer in time to the relevant rule's drafting indicates that pension plans are treated differently from profit-sharing plans. In 1971, the IRS ruled that 26 C.F.R. § 1.401-7 "does not extend to profit-sharing and stock bonus plans." Rev. Rul. 71-313, 1971 WL 26693 (1971). Therefore, the Court holds that plaintiff's claims are not precluded by 29 U.S.C. section 1144(d). Therefore, defendants' motion to dismiss on this issue is **DENIED.** This issue shall not be relitigated.

### C. FIDUCIARY BREACH (COUNTS I AND II)

#### 1. Whether Defendants Acted as a Fiduciary

Defendants argue that they did not act as fiduciaries to the plan participants for three reasons: (i) they acted as plan settlors, rather than fiduciaries, (ii) they did not exercise sufficient

5

discretionary control over plan administration, and (iii) forfeited non-vested contributions are not "plan assets." For the reasons set forth below, the Court disagrees. This issue shall not be relitigated.

                    i.     *Plan Settlors*

"In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether [the person employed to provide services under a plan] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

As between a fiduciary and a settlor, fiduciary duties "consist of such actions as the administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999). Conversely, a settlor "makes a decision regarding the form or structure of the Plan." *Id*. Settlors make decisions "such as establishing, funding, amending, and terminating the trust." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014).

Here, the Plan document provides that the Committee's authority is limited to exercising "discretionary authority to administer and interpret the Plan." (Dkt. No. 25-1, ("Plan Doc."), MTD045 (§ 15.02)). Conversely, settlor functions like amending and terminating the Plan are expressly reserved for Clorox's Board of Directors. (*See* Plan Doc. MTD046 (Art. XVI); MTD047 (§ 17.02)). Therefore, this Court joins others in this district finding that allocating forfeiture amounts is a fiduciary, as opposed to a settlor, function. *See Hutchins v. HP Inc.*, No. 23-CV-05875-BLF, 2024 WL 3049456, at *5 (N.D. Cal. June 17, 2024); *Rodriguez v. Intuit Inc.*, No. 23-CV-05053-PCP, 2024 WL 3755367, at *5 (N.D. Cal. Aug. 12, 2024).

### ii. Sufficient Discretionary Authority

Next, defendants argue that they did not exercise sufficient discretionary authority over Plan administration to render them fiduciaries. They argue that they "are only fiduciaries to the extent that they exercise discretionary authority with respect to the particular activity at issue." (Dkt. No. 24 at 18 (quoting *In re JDS Uniphase Corp. ERISA Litig.*, 2005 WL 1662131, at *3.)) "[P]rocessing claims within a framework of policies, rules, and procedures established by others" does not necessarily confer fiduciary status. *Gelardi v. Pertec Comput. Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985) (*per curiam*) *overruled on other grounds by Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011).

Here, however, under the Plan, the Committee could choose how to allocate forfeitures, including the option to use forfeited funds to pay administrative fees. The Plan document states that "[f]orfeited amounts will be used, as determined by the Committee in its sole discretion, to pay Plan expenses, to reduce contributions to the Plan and to restore forfeitures." (Plan Doc. at MTD030 (§ 8.02(a)).[2] Such discretionary decision making is enough to comprise sufficient authority.

### iii. Whether Forfeited Funds are Plan Assets

A person is a fiduciary of a plan's assets if they "exercise[] any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). Defendants argue that the forfeited funds at issue are not plan assets. "Plan assets under [ERISA § 3(21)(A)(i)] are to be identified based on ordinary notions of property rights[,]" including whether participants have a "beneficial ownership interest" in them. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 658 (9th Cir. 2019).

"[A] plan obtains a beneficial interest in particular property if, under common law principles, the property is held in trust for the benefit of the plan or its participants and

---

[2] The Plan document lays out further procedures to follow when restoring previous forfeitures, but such procedures do not appear to be relevant here given plaintiff's assertion that no such restoration happened during the plan years at issue.[2] (Plan Doc. MTD030 (§ 8.02(c)) ("When restoring forfeitures the funds "will first be drawn from forfeitures.")

7

beneficiaries, or if the plan otherwise has an interest in such property on the basis of ordinary notions of property rights." DOL Adv. Op. 99-08A, 1999 WL 343509, at *3 (May 20, 1999).

Here, plaintiff pleads that employer contributions are held in trust for the benefit of the Plan, and the Plan requires defendants to make annual contributions to a trust on behalf of eligible participants. (Plan Doc. MTD021 (§ 5.06).) Once the contribution is made "to the Trust," it is held by the "Trustee," who is the "person or entity appointed by" Clorox "to hold the Plan's assets." (Plan Doc. MTD012 (§ 2.30)). The "Trustee" is party to a "Trust Agreement" with Clorox regarding "the investment, management, and control of Plan assets." (Plan Doc. MTD012 (§ 2.29)). The Plan, therefore, allows plan assets to be held in trust for the benefit for the Plan or its beneficiaries because the contributions "become plan assets" when "the employer pays the employer contributions over to the plan." *Cline v. Indus. Maint. Eng'g & Cont. Co.,* 200 F.3d 1223, 1234 (9th Cir. 2000).

Defendants counter that the Plan does not have a beneficial interest in the plan assets, that is, merely holding assets in a plan's trust is not sufficient to establish a beneficial interest. They cite Eighth Circuit authority holding that beneficial interest is established when "the plan sponsor [has] expresse[d] an intent to grant . . . or has acted or made representations sufficient to lead participants and beneficiaries of the plan to reasonably believe that such funds separately secure the promised benefits or are otherwise plan assets." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 647 (8th Cir. 2007). *Kalda* is distinguishable. There, while holding that "unpaid contributions do not qualify as plan assets," the court did not address *paid-in contributions* like those at issue here. *Id.* at 647. Thus, *Kalda* does not preclude a finding that the forfeited funds are plausibly plan assets.

### 2. Whether Defendants Breached a Duty

Next, defendants argue that ERISA's fiduciary duties of loyalty and prudence do not require them to reallocate forfeitures to beneficiaries' individual accounts because the Plan does not prescribe such. (Dkt. No. 24 at 15.) Plaintiff responds that the Plan's allowance of reallocating forfeitures is not sufficient to allow the alleged breach of fiduciary duties. (Dkt. No. 27 at 17 (citing *Fifth Third Bankcorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014))).

8

Plaintiff correctly observes that following a Plan is not a shield against ERISA's requirement to follow fiduciary duties. *See Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA.").

By statute, the duty of loyalty requires that the fiduciary act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

While plans under ERISA cannot serve as a shield in cases where administrators violate ERISA's terms, the purpose of the statute is to "protect contractually defined benefits" and to assure "reliance on the face of written plan documents." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013) (cleaned up). That said, the "duty to act in accordance with plan document does not . . . require a fiduciary to resolve every issue of interpretation in favor of plan beneficiaries." *Collins v. Pension & Ins. Comm. of S. Cal. Rock Prod. & Ready Mixed Concrete Associations*, 144 F.3d 1279, 1282 (9th Cir. 1998).

Although IRS regulations do not explicitly allow defendants' practices for profit-sharing plans as they do for pension plans (see *supra* Part IV), it is instructive that the Department of Treasury now proposes new regulations that "would clarify" that defendants' practice is allowed. Specifically, they "would clarify that forfeitures arising in any defined contribution plan[3] . . . may be used . . . (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12283 (proposed Feb. 27, 2023). Plaintiffs do not persuasively explain how the

---

[3] For clarity, the parties agree that the Plan at issue is a defined contribution plan, which is a superset including profit-sharing plans. (*See* Compl. ¶ 4; Dkt. No. 24 at 9:18.)

9

Department of Treasury would now allow forfeitures to be used to reduce employer contributions if such a practice breached fiduciary duties.

Further, when discussing the fiduciary duty of prudence, the Supreme Court has indicated inquiries into fiduciary breaches are "context specific." *See Dudenhoeffer*, 573 U.S. at 425. Plaintiff's broad assertion, here, that it is necessarily a fiduciary breach to use participant money to pay administrative costs instead of forfeited amounts, is therefore inconsistent with the Supreme Court's context specific approach to evaluating fiduciary duties.

Fundamentally, plaintiff's claim is impermissibly broad. Given the request, plaintiff is allowed to amend to plausibly allege disloyalty or imprudence based on more particularized facts or special circumstances. *See Dudenhoeffer*, 573 U.S. at 427–29 (noting that whether a plaintiff could plausibly allege imprudence might turn on whether the plaintiff could point to "a special circumstance affecting the reliability of the market price"). Accordingly, the Court **GRANTS** defendants' **MOTION TO DISMISS** plaintiff's fiduciary duty claims with **LEAVE TO AMEND.**

### D. ANTI-INUREMENT (COUNT III)

Plaintiff argues that defendants' forfeited fund reallocation is tantamount to using plan assets to forgive an employer's debts to a Plan, which courts have found impermissible. (Dkt. No. 27 at 19.) Defendants argue that using forfeited amounts, internally, within the same Plan, is permissible. (Dkt. No. 24 at 21.)

ERISA's anti-inurement provision requires that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1).  This "section focuses exclusively on whether fund assets were used to pay pension benefits to plan participants . . . ." *Hughes Aircraft*, 525 U.S. at 442; *see also Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004). In *Hughes*, the Court held that incidental benefits to the employer did not constitute a breach of the anti-inurement provision. *Hughes Aircraft*, 525 U.S. at 445.

Other courts have also held that more than a benefit to employers is required to state an anti-inurement claim. In *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, the Eleventh

Circuit held that anti-inurement claims require "a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants." 953 F.2d 587, 592 n.6 (11th Cir. 1992). Other circuits concur. *See also, Flanigan v. General Electric*, 242 F.3d 78, 87–88 (2d Cir. 2001) (indirect benefits insufficient); *Holliday v. Xerox Corp* 732 F.2d 548, 550–51 (6th Cir. 1984) ("incidental side effect" insufficient); *Hutchins* 2024 WL 3049456, at *7–9 (comprehensively reviewing various circuit authority on the anti-inurement rule and dismissing similar claims to those at issue here).

In those cases, as here, defendants received indirect and incidental benefits from funds to which plaintiff is not entitled under the Plan language. The Court **GRANTS** defendants' motion to dismiss on this ground. As plaintiff indicated on the record that he would not reassert this claim, **LEAVE TO AMEND** is not granted.

### E. PROHIBITED TRANSACTIONS (COUNTS IV AND V)

Defendants argue that plaintiff fails to allege a prohibited transaction between the Plan and another party because the reallocation of forfeitures within the same plan do not fall under ERISA sections 406(a) or (b). ERISA provides that a fiduciary:

> shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> (B) lending of money or other extension of credit between the plan and a party in interest;
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1). ERISA also prohibits certain "transactions between plan and fiduciary" including where a fiduciary "deal[s] with the assets of the plan in his own interest or for his own account . . . ." *Id.* § 1106(b)(1).

Plaintiff argues that defendants' reallocation is not within the same plan because defendant Clorox and the Plan comprise two sides of a transaction. The Court is not persuaded. Plaintiff's allegations state "reallocation of the forfeitures in the Plan's trust fund to reduce its future non-elective contributions benefitted the Company by reducing its own contribution expenses." (Compl.

11

¶ 32.) Plaintiff specifically challenges the practice in which "an employer-fiduciary reallocates the unvested portion of the participant's account . . . to offset its own contributions instead of defraying plan expenses borne by participants." (Dkt. No. 27 at 1.) The language of the complaint, therefore, alleges that forfeited amount transfers are intra-plan transfers, and not prohibited inter-plan transfer. *See Hutchins* 2024 WL 3049456, at *9; *see also Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan,* No. 16-CV-00486-EDL, 2017 WL 8948732, at *8–9 (N.D. Cal. Jan. 18, 2017) (finding that "using one benefit to fund another" is not "the type of 'transaction' to which Section 1106 is directed.").

Plaintiff counters that the Supreme Court has found a similar arrangement to be a "transaction" under the Internal Revenue Code's parallel provision to section 1106. (Dkt. No. 27 at 22 (citing *Commissioner v. Keystone Consolidated Industries*, 508 U.S. 152, 158–59 (1993). That "transaction" unlike the one alleged here, involved a "sale or exchange" under the Internal Revenue Code because it involved "the transfer of property in satisfaction of a debt," however. *Id.* at 159. Here, there was no transference of property and no satisfaction of a debt. Further, although Plaintiff argues that § 1106(b)(1) does not require allegations of a transaction, this argument is contrary to Ninth Circuit authority. *See Wright*, 360 F.3d at 1101 (finding that "[p]laintiff[] fail[ed] to identify any transaction that falls within § 1106(a)(1) or (b)" where they alleged nothing akin to a "sale, exchange, or leasing of property.").

The Court, therefore, **GRANTS** defendants' motion on this ground. As plaintiff indicated on the record that he would not reassert this claim, **LEAVE TO AMEND** is not granted.

### F. DUTY TO MONITOR (COUNT VI)

Plaintiff alleges that defendant Clorox, through its Board of Directors has the power to appoint and remove defendant Committee. (Dkt. No. 27 at 24.) Plaintiff concedes that this argument is derivative of claims that the "Committee committed numerous plausible violations of ERISA when allocating forfeitures to reduce Clorox's contributions to the Plan . . . ." (*Id.* at 25.) This claim is, therefore, **DISMISSED** for the same reasons.

## IV. CONCLUSION

For the foregoing reasons, the Court makes the following rulings:

- Defendants' motion to dismiss all causes of action for lack of standing is **DENIED**.
- Defendants' motion to dismiss all causes of action under 29 U.S.C. § 1144(d) is **DENIED.**
- Defendants' motion to dismiss plaintiff's first and second causes of action for breach of fiduciary duties is **GRANTED** with **LEAVE TO AMEND**.
- Defendants' motion to dismiss plaintiff's third cause of action for violation of the anti-inurement rule is **GRANTED** without **LEAVE TO AMEND.**
- Defendants' motion to dismiss plaintiff's fourth and fifth causes of action for prohibited transactions is **GRANTED** without **LEAVE TO AMEND**.
- Defendants' motion to dismiss plaintiff's sixth cause of action for violation of the duty to monitor is **GRANTED** with **LEAVE TO AMEND**.

The Court sets the following deadlines for plaintiff's amended complaint, if any.
- Plaintiff's Amended Complaint due by: November 12, 2024
- Defendants' anticipated Motion to Dismiss filed by: December 10, 2024
- Plaintiff's Opposition due by: January 10, 2025
- Defendants' Reply due by: January 24, 2025
- Defendants' Motion to Dismiss to be heard by: February 11, 2025, at 2:00 p.m.

Plaintiff shall comply with the Court's Standing Order ¶ 13. As noted herein, parties shall not renew arguments already made and resolved in this Order. Nor may defendants assert new arguments that could have been asserted in the first instance.

This terminates Docket No. 24

**IT IS SO ORDERED**.

Date: November 1, 2024

                                           **YVONNE GONZALEZ ROGERS**
                                           **UNITED STATES DISTRICT COURT JUDGE**