BRETT SCHUMAN (SBN 189247)
*BSchuman@goodwinlaw.com*
**GOODWIN PROCTER** LLP
Three Embarcadero Center
San Francisco, California 94111
Tel.: 415-733-6000

JAMES O. FLECKNER (*pro hac vice*)
*jfleckner@goodwinlaw.com*
DAVID ROSENBERG (*pro hac vice*)
*drosenberg@goodwinlaw.com*
**GOODWIN PROCTER** LLP
100 Northern Avenue
Boston, MA 02210
Tel.: 617-570-1000

JAIME A. SANTOS
*jsantos@goodwinlaw.com*
**GOODWIN PROCTER** LLP
1900 N Street, N.W.
Washington, DC 20036
Tel: 202-346-4000

Attorneys for Defendants
THE CLOROX COMPANY; THE EMPLOYEE
BENEFITS COMMITTEE OF THE CLOROX
COMPANY 401(k) PLAN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| JAMES MCMANUS,<br><br>Plaintiff,<br><br>v.<br><br>THE CLOROX COMPANY; THE EMPLOYEE BENEFITS COMMITTEE OF THE CLOROX COMPANY 401(k) PLAN; and DOES 1 to 10 inclusive,<br><br>Defendants. | Case No. 4:23-CV-05325-YGR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        February 11, 2025<br>Time:        2:00 p.m.<br>Courtroom: 1 – 4th Floor<br>Judge:       Hon. Yvonne Gonzalez Rogers<br><br>Am. Complaint filed:    November 12, 2024 |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

    I.     Introduction ................................................................................................................ 1

    II.    Background .................................................................................................................. 3

          A.    The Plan .......................................................................................................... 3

          B.    Plaintiff sues Clorox for failing to use forfeitures to increase his benefits by reducing the administrative expenses he paid under the Plan. .............................................................................................................. 5

          C.    This Court dismisses Plaintiff's original complaint. ................................. 6

          D.    Plaintiff files an amended complaint that contains nearly the same allegations that this Court deemed insufficient to state a plausible claim for relief. ................................................................................................ 8

    III.   Standard of Review ................................................................................................... 9

    IV.   Argument—The FAC offers no new allegations that salvage Plaintiff's claims. 9

          A.    Plaintiff's risk-of-underfunding theory does not save his claims. ............ 11

          B.    Plaintiff's conclusory conflict-of-interest assertions do not save his claims. ........................................................................................................... 13

    V.    Conclusion ................................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 9

*Bell Atl. Corp. v. Twomblyl*,
   550 U.S. 544 (2007) ................................................................................................ 9

*Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete
   Ass'ns*,
   144 F.3d 1279 (9th Cir. 1998) ............................................................... 10, 12, 14

*Conkright v. Frommert*,
   559 U.S. 506 (2010) .............................................................................................. 15

*Dimou v. Thermo Fisher Sci. Inc.*,
   2024 WL 4508450 (S.D. Cal. Sept. 19, 2024) ...................................................... 2

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) ................................................................................................ 9

*Foltz v. U.S. News & World Rep., Inc.*,
   865 F.2d 364 (D.C. Cir. 1989) ............................................................................. 10

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .............................................................................. 13

*Henry v. Champlain Enters., Inc.*,
   445 F.3d 610 (2d Cir. 2006) (Sotomayor, J.) ...................................................... 15

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) ....................................................................................7, 10, 12

*Hutchins v. HP Inc.*,
   __ F. Supp. 3d __, 2024 WL 3049456 (N.D. Cal. June 17, 2024) ......................... 2, 5, 6, 7, 12

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) .............................................................................................. 12

*Partida v. Schenker, Inc.*,
   2024 WL 1354432 (N.D. Cal. Mar. 29, 2024) ..................................................... 13

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ..........................................................................................13-14

*Rodriguez v. Intuit Inc.*,
  2024 WL 3755367 (N.D. Cal. Aug. 12, 2024) ........................................................ 11

*Rozo v. Principal Life Ins. Co.*,
  48 F.4th 589 (8th Cir. 2022) ............................................................................. 10

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013) ........................................................................................... 10

*Wright v. Oregon Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ................................................................. 10, 13, 14

**Statutes**

26 U.S.C. § 401(k) ................................................................................................. 7

29 U.S.C. § 1104(a)(1)(A) ............................................................................ 5, 8, 14

29 U.S.C. § 1104(a)(1)(B) ................................................................................... 5, 8

29 U.S.C. § 1106(a)(1) ......................................................................................... 5

29 U.S.C. § 1106(b)(1) ......................................................................................... 5

29 U.S.C. § 1108(c)(3) ......................................................................................... 13

**Other Authorities**

26 C.F.R. § 1.401-7 ........................................................................................... 6, 7

Dep't of the Treasury, Internal Rev. Serv., Retirement News for Employers,
  Publication 4278-B (May 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf. ........................ 7

Forfeitures, Internal Revenue Manual (Feb. 16, 2017),
  https://www.irs.gov/irm/part7/irm_07-012-001#idm139730277532416 ............................... 7

Dep't of Labor, *A Look at 401(k) Plan Fees* (Sept. 2019), https://www.dol.gov/
  sites/dolgov/files/ebsa/about-ebsa/our-activities/resourcecenter/publications/a-
  look-at-401k-plan-fees.pdf ................................................................................ 4

Rev. Rul. 67-68, 1967-1 C.B. 86 ............................................................................. 7

Rev. Rul. 71-313, 1971-2 C.B. 203 .......................................................................... 7

1

<u>**NOTICE OF MOTION AND MOTION**</u>

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3

NOTICE IS HEREBY GIVEN that on February 11, 2025, at 2:00 p.m., or as soon

4

thereafter as counsel may be heard by the above-titled Court, located at 1301 Clay Street, Oakland,

5

CA 94612, Defendants The Clorox Company (together with its affiliates, "Clorox") and the

6

Employee Benefits Committee of the Clorox Company's 401(k) Plan (the "Committee" of the

7

"Plan", and, with Clorox, the "Defendants") will and hereby do move the Court to dismiss the

8

Amended Class Action Complaint (the "Complaint") filed by James McManus ("Plaintiff")

9

pursuant to Fed. R. Civ. P. 12(b)(6).

10

Defendants respectfully request that the Complaint be dismissed with prejudice under Fed.

11

R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim. Defendants' motion is based on

12

this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the

13

previously filed Declaration of David Rosenberg and exhibits attached thereto (Dkt. No. 25), the

14

pleadings and papers on file, and any evidence and argument presented to the Court at the hearing.

15

<u>**STATEMENT OF THE ISSUES TO BE DECIDED**</u>

16

Whether the Complaint fails to state a claim for breach of ERISA's fiduciary duties based

17

on a theory that, contrary to both the Plan document and also the settled understanding of

18

Congress and the Treasury Department, ERISA compels fiduciaries to use forfeited employer

19

contributions to reduce participants' administrative expenses absent a risk that the plan sponsor is

20

so on the verge of financial collapse that it will be unable to satisfy its contribution allegations

21

under the Plan.

22

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

23

**I.    Introduction**

24

Sometimes retirement plan participants separate from their employment before their

25

employer contributions fully vest, in which case they forfeit those employer contributions.

26

Employers who sponsor retirement plans anticipate this, and they often design those retirement

27

plans to permit those forfeited amounts to be used to satisfy their employer-contribution

28

obligations to participants who remain in the retirement plan—in other words, they write their

1  plans to permit the use of forfeited unvested employer contributions as employer contributions for
2  other participants who have not forfeited.

3     Plaintiff filed this suit to challenge this common practice—and his counsel almost
4  simultaneously sued numerous large employers who sponsor plans that are designed this way—
5  contending that the Employee Retirement Income Security Act of 1974 ("ERISA") requires
6  forfeitures to be used to increase participant benefits by reducing participant expenses.  This Court
7  has already rejected Plaintiff's broad theory that this common practice is necessarily a fiduciary
8  breach under ERISA, which was enacted to ensure that employees receive the retirement benefits
9  *they were promised*, but not to create a substantive right to any particular type or level of benefits.
10 Dkt. No. 44 ("MTD Order").  And in doing so, this Court joined other courts that have likewise
11 held that such a broad theory of breach would be a departure "from over 38 years of settled rules
12 regarding defined contribution plans" by Congress and the Treasury Department, which enjoys
13 concurrent regulatory and enforcement authority over tax-qualified ERISA-governed retirement
14 plans along with the Department of Labor ("DOL").  *See Hutchins v. HP Inc.*, __ F. Supp. 3d __,
15 2024 WL 3049456, at *6 (N.D. Cal. June 17, 2024); *Dimou v. Thermo Fisher Sci. Inc.*, 2024 WL
16 4508450 (S.D. Cal. Sept. 19, 2024), at *9.

17    Like the courts in *Hutchins* and *Dimou*, this Court afforded Plaintiff leave to amend "to
18 plausibly allege disloyalty or imprudence based on more particularized facts or special
19 circumstances." MTD Order 10.  Plaintiff's First Amended Complaint ("FAC"), however, does
20 not do so.  Instead, it adds only naked assertions that Defendants had conflicts of interest that
21 prevented them from acting prudently and loyally, combined with the still breathtakingly broad
22 theory that ERISA *requires* retirement plan fiduciaries to use forfeitures to pay for administrative
23 costs unless the plan sponsor is in such dire financial straits that it will be unable to satisfy its
24 contribution obligations.  FAC ¶¶ 25-33.  That does not salvage Plaintiffs' claims.  The Court did
25 not allow Plaintiff to re-argue, as a general proposition, that ERISA's fiduciary provisions require
26 plan fiduciaries to use forfeitures to pay for administrative costs rather than to fund participant
27 benefits, because these "allegations" could be asserted in virtually every case.  But the same is true
28 of Plaintiff's new "allegations"—and indeed, they have been asserted essentially verbatim in three

1    other amended complaints filed by Plaintiff's counsel against other plan sponsors.  Just like the

2    "impermissibly broad" claims in Plaintiff's original complaint, the claims in Plaintiff's FAC

3    would still interpret ERISA to effectively forbid what ERISA plans expressly permit, and what

4    Congress and the Treasury Department have long understood analogous provisions in the Tax

5    Code to permit since before ERISA's enactment.

6         In short, Plaintiff's new theory is just as impermissibly broad as the theory underlying his

7    original complaint, and his new "allegations" contain none of the "particularized facts or special

8    circumstances" that this Court held would be necessary to sustain his claims.  This Court should

9    dismiss this case, this time with prejudice.

10   **II.    Background[1]**

11        **A.    The Plan**

12        This case is about the treatment of employer retirement-plan contributions that are forfeited

13   when employees leave Clorox's employment before they are fully vested.  The non-elective

14   employer contribution component of the Clorox Company 401(k) Plan (the "Plan") is available to

15   eligible employees, who automatically enroll after completing one year of service with Clorox.

16   MTD022 (Plan § 5.06(b)).  This Plan component is funded solely by Clorox—employees do not

17   contribute one penny but rather are entitled to receive non-elective contributions from Clorox each

18   year equal to 6% of their eligible compensation.  MTD021-22 (Plan § 5.06).

19        Plan participants do not vest in non-elective employer contributions immediately; rather,

20   they vest in those contributions pursuant to a set schedule that is based on their years of service at

21   Clorox or upon a Plan-specified event, such as reaching a certain age.  FAC ¶ 21; MTD029 (Plan

22   §§ 8.01(b), (c)).  Relevant here, if a participant leaves Clorox's employment before being fully

---

[1] This background is based on the well-pleaded allegations in Plaintiff's FAC, the Plan document, and the Plan's public filings submitted to the Department of Labor ("DOL").  This Court previously determined that the Plan's public filings could be considered on a motion to dismiss because they are judicially noticeable, and that the Plan document could likewise be considered on a motion to dismiss because it is incorporated by reference and forms the basis of Plaintiff's claims.  MTD Order 2-3.  To avoid duplicative filings, Clorox cites these documents as previously filed (Dkt. No. 25), using the footer pagination ("MTD___").  Further, Clorox assumes this Court is familiar with the underlying facts given the prior briefing and argument in this case.  For brevity, Clorox incorporates by reference the more extended factual background in its prior motion to dismiss (Dkt. No. 24).

vested, any non-vested employer contributions are forfeited and are removed from the participant's Plan account.  FAC ¶ 22; MTD030 (Plan § 8.02(a)).[2]

The Plan Document states that "[f]orfeited amounts will be used, as determined by the Committee[3] in its sole discretion, to pay Plan expenses, to reduce contributions to the Plan and to restore forfeitures."  MTD029 (Plan § 8.02(a)(i)); FAC ¶ 25.  As to the latter provision, the Plan Document provides expressly that, if a previously-employed participant resumes her status as an eligible employee within five years, any amounts previously forfeited from her account will be restored to her account and the funds for such restoration "will be drawn first" from forfeitures. MTD030 (Plan § 8.02(c)).

No provision of the Plan entitles any participant to contributions made to or forfeited by other participants, nor does the Plan entitle participants to retirement-plan benefits free of administrative expenses.  As DOL has explained, there are many administrative services required to offer a plan (including legal, accounting, trustee, recordkeeping, and investment-management services), and the costs of these services may be borne, in whole or in part, by the employer or allocated to plan participants as a proportion of their individual account balance or as a flat fee. Dep't of Labor, *A Look at 401(k) Plan Fees*, at 3 (Sept. 2019), https://www.dol.gov/sites/dolgov/ files/ebsa/about-ebsa/our-activities/resourcecenter/publications/a-look-at-401k-plan-fees.pdf.  So too here—Plaintiff alleges Plan participants pay administrative expenses through charges to their individual participant accounts.  FAC ¶ 23.  And the Plan's public filings clarify that many administrative expenses are actually paid by Clorox, "except for certain investment fees and loan fees" and "[q]uarterly recordkeeping fees," which are "deducted from participants' accounts." MTD155 (2022 Plan 5500); MTD198 (2021 Plan Form 5500); MTD238 (2020 Plan Form 5500); MTD278 (2019 Plan Form 5500); MTD320 (2018 Plan Form 5500); MTD359 (2017 Plan Form 5500); *see also* MTD045 (Plan § 15.04) (expenses are paid by the Plan if not paid by Clorox).

---

[2] There is also a 401(k) component of the Plan, funded by participant contributions and a company match, in which participants are always 100% vested and therefore no contributions are forfeited. *See* MTD029 (Plan § 8.01).

[3] The "Committee" is the Employee Benefits Committee of the Clorox Company 401(k) Plan. MTD Order 1.

As expressly permitted by the Plan Document and consistent with the "settled understanding of Congress and the Treasury Department regarding defined contribution plans," *Hutchins*, 2024 WL 3049456, at *6, the Committee has generally used forfeitures to reduce the amount of employer contributions otherwise necessary to meet the Plan's funding obligations, FAC ¶ 33; *e.g.*, MTD154 (2200 Plan 5500) (disclosing amounts of forfeitures used to reduce Clorox's contributions).

> **B.     Plaintiff sues Clorox for failing to use forfeitures to increase his benefits by reducing the administrative expenses he paid under the Plan.**

Plaintiff is a former Clorox employee and a current Plan participant.  FAC ¶ 11.  He does not allege that Clorox failed to make any required contribution to his individual Plan account, that his individual Plan account received less than was promised under the Plan, or that his account suffered investment losses or lost profits due to any investment decisions pertaining to his account. Rather, he alleges that Defendants had "discretion" to use forfeitures of former participants "to pay the Plan's expenses or reduce [Clorox's] contributions to the Plan," and that Defendants elected the latter while ERISA required Defendants to elect the former.  FAC ¶¶ 10, 23-25.

Plaintiff originally asserted claims for breach of the duty of loyalty (29 U.S.C. § 1104(a)(1)(B)), breach of the duty of prudence (29 U.S.C. § 1104(a)(1)(A)), breach of ERISA's anti-inurement provision ((29 U.S.C. § 1103(c)(1)), violations of ERISA's prohibited-transaction provisions (29 U.S.C. § 1106(a)(1); *id.* § 1106(b)(1)), and failure to monitor,[4] based on a theory that it is essentially a *per se* violation of each of these provisions to use forfeitures in the way that the Plan expressly permits and that Congress and Treasury have long understood is permitted by law.  Plaintiff's counsel nearly simultaneously sued myriad other sponsors of large plans, with nearly carbon-copy complaints, asserting that all violated ERISA (and, apparently, have been for decades) by following this longstanding practice.[5]

---

[4] Compl. ¶¶ 38-73 (Dkt. No. 1).

[5] *See, e.g.*, *Hutchins v. HP Inc.*, No. 23-5875 (N.D. Cal.); *Perez-Cruet v. Qualcomm Inc.*, No. 23-1890 (S.D. Cal.), *Rodriguez v. Intuit Inc.*, No. 23-5053 (N.D. Cal.); Compl., *Dimou v. Thermo Fisher Sci. Inc.*, No. 23-1732 (S.D. Cal.).

**C.      This Court dismisses Plaintiff's original complaint.**

Undertaking a context-sensitive analysis of Plaintiff's allegations and legal theories, this Court dismissed Plaintiff's claims, permitting leave to amend only in part.[6]

*First*, addressing Plaintiff's fiduciary-breach claims, the Court held that although it believed the Committee was exercising a fiduciary function when allocating forfeited employer contributions pursuant to the Plan, Plaintiff's theory that allocating those funds toward employer contributions rather than Plan expenses was "necessarily" a fiduciary breach was "impermissibly broad."  MTD Order 10.  The Court observed that no existing Treasury regulation *expressly required* defined-contribution plans to allocate forfeitures toward employer contributions, and so there was no direct conflict between federal law and Plaintiff's theory.  But it viewed decades-old Treasury regulations and proposed regulations intended to "clarify" the permissible uses of forfeitures in defined-contribution plans as contextual indications that Plaintiff's *per se* theory was implausible.  MTD Order 9-10.

The Court's analysis echoed Judge Freeman's analysis in a virtually identical case against HP—a decision with which the Court said it agreed.  MTD Hrg. Tr. 2 ("I believe that Judge Freeman's analysis was accurate.").  Judge Freeman similarly noted that an existing Treasury regulation, 26 C.F.R. § 1.401-7, that requires forfeitures to be used to reduce employer contributions and forbids forfeitures from being used to increase employee benefits does not on its face apply to defined-contribution plans and therefore did not foreclose the plaintiff's per se theory as a matter of law.  *Hutchins*, 2024 WL 3049456, at *4.  And she noted a proposed regulation that "clarif[ies] that "forfeitures arising in any defined contribution plan" *may be* used to reduce employer contributions, but does not yet have the force of law.  *Id.*  Nevertheless, Judge Freeman considered these sources "persuasive authority" that the plaintiff's theory that this practice is a *per se* fiduciary breach was implausible—particularly combined with a Conference Report that indicated Congress's understanding going back to 1986 that forfeitures in defined-contribution

---

[6] Pursuant to this Court's explicit instructions, Clorox does not raise in this motion any ground for dismissal that the Court indicated will not be revisited, but it reserves the right to raise those issues on appeal.  *See, e.g.*, MTD Order 4, 6 (standing, fiduciary status).

plans *could* be used to reduce employer contributions. *Id.* at *4, *6. All together, Judge Freeman observed that accepting the plaintiff's *per se* theory of breach would be a departure "from over 38 years of settled rules regarding defined contribution plans," and was therefore implausible. *Id.* at *6-*7.[7]

Accordingly, both this Court and Judge Freeman concluded that the breach theory proffered in this case and *Hutchins* failed to state a claim. This Court, like Judge Freeman, left open the possibility that Plaintiff could amend his complaint to include "more particularized facts or special circumstances" beyond simply the allegation that forfeitures were applied to employer contributions, in order to plausibly allege disloyalty or imprudence. MTD Order 10; *accord Hutchins*, 2024 WL 3049456, at *7.

*Second*, this Court held that Plaintiff's anti-inurement claim failed as a matter of law. MTD Order 10-11. The Court noted that the focus of ERISA's anti-inurement provision is ensuring that plan assets are used to pay benefits to plan participants, which is precisely what Plaintiff alleges (indeed, complains about) here. *Id.* at 10 (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999)). Because "incidental benefits to the employer" do not constitute an unlawful inurement, the Court dismissed this claim without leave to amend. *Id.* at 9-10 (citing *Hutchins*, along with cases from the Second, Sixth, and Eleventh Circuits).

*Third*, the Court held that Plaintiff's prohibited-transaction claim failed because he did not allege an unlawful "transaction" involving the Plan, but rather only an intra-plan transfer. MTD Order 11-12. The Court dismissed this claim without leave to amend.

*Fourth*, the Court dismissed the Plaintiff's failure-to-monitor claim because it was purely derivative and therefore failed on the same grounds as the other claims that had been dismissed.

---

[7] *See* Rev. Rul. 67-68, 1967-1 C.B. 86 (applying to Tax Code before 1978 introduction of 26 U.S.C. § 401(k)); Rev. Rul. 71-313, 1971-2 C.B. 203 (same). In 2010 the IRS made its view explicit that, in a defined contribution plan, "forfeitures may be used to pay for a plan's administrative expenses and/or to reduce employer contributions," citing 26 C.F.R. § 401-7(a). Dep't of the Treasury, Internal Rev. Serv., Retirement News for Employers 4-5, Publication 4278-B (May 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf. Its 2017 Internal Revenue Manual reiterates that forfeitures in a profit-sharing plan ( a type of defined-contribution plan) "must be allocated to the remaining participants or used to reduce employer contributions that are otherwise required under the plan." Forfeitures, Internal Revenue Manual § 7.12.1.9 (Feb. 16, 2017), https://www.irs.gov/irm/part7/irm_07-012-001#idm139730277532416.

MTD Order 12.

### D.    Plaintiff files an amended complaint that contains nearly the same allegations that this Court deemed insufficient to state a plausible claim for relief.

After this Court's dismissal order, Plaintiff amended his complaint, streamlining it to two claims: (i) breach of the duty of loyalty (29 U.S.C. § 1104(a)(1)(A)) and (ii) breach of the duty of prudence (29 U.S.C. § 1104(a)(1)(B)).    But despite this Court's instruction that Plaintiff had to allege "particularized facts or special circumstances," rather than an "impermissibly broad" theory that it is "necessarily a fiduciary breach" to charge Plan expenses to participant accounts rather than direct that they be paid for with forfeited employer contributions as the Plan and decades of settled practice permit, new well-pleaded factual allegations are nowhere to be found in the FAC. The new material in the FAC is limited to two points.

*First*, the FAC states that "Defendants are presented with a conflict of interest in administering the Plan and managing and disposing of its assets."  FAC ¶ 28.  The FAC is devoid of any factual content regarding the nature or derivation of this purported conflict, though it appears to fault Defendants for not retaining an independent fiduciary to manage forfeitures in light of the purported conflict.  FAC ¶ 31.

*Second*, the FAC opines that using forfeitures to reduce employer contributions "is always in the best interest of Clorox" and that the only time using forfeitures to pay Plan expenses "would be in the participants' best interests" is if there is "a risk that Clorox may be unable to satisfy its contribution obligations."  FAC ¶¶ 26-27.  Under this new theory, the *only* time using forfeitures to satisfy employer-contribution obligations is not a fiduciary breach is if the plan sponsor's financial condition is so precarious—so on the verge of financial collapse—that it likely could not make the 6% employer contributions that it is contractually obligated to make.  In other words, only the employer's impending violation of the Plan can justify using forfeitures to pay Plan expenses without violating ERISA's fiduciary duties of prudence and loyalty.

Aside from these two points, the FAC simply repeats its prior allegations about the structure of the plan, along with its conclusory assertions that Defendants lacked a reasoned and

1  impartial decisionmaking process and failed to adequately consider whether it was in the best

2  interests of the Plan's participants to use forfeitures to reduce or eliminate Plan expenses paid by

3  participants.  *Compare* FAC ¶ 47, *with* Compl. ¶ 47.  Combined with his new risk-of-default

4  theory and the assertion that Defendants had a "conflict of interest," Plaintiff contends that

5  "declining to use forfeitures in the Plan to reduce or eliminate the administrative expenses charged

6  to participant accounts" was a fiduciary breach.  FAC ¶ 60; *see also* FAC ¶¶ 50-52.

7  **III.    Standard of Review**

8          To survive dismissal under Rule 12(b)(6), a plaintiff must "state a claim to relief that is

9  plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

10  *Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must demonstrate "more than a sheer

11  possibility that a defendant has acted unlawfully."  *Id.*  This applies to ERISA as well:  a "careful,

12  context-sensitive scrutiny of a[n ERISA] complaint's allegations," through a motion to dismiss, is

13  the appropriate way to accomplish the "important task" of "divid[ing] the plausible sheep from the

14  meritless goats."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  The motion to

15  dismiss is an "important mechanism for weeding out meritless [ERISA] claims."  *Id.* at 425-426.

16  **IV.    Argument—The FAC offers no new allegations that salvage Plaintiff's claims.**

17          This Court provided Plaintiff—at his request—with an opportunity to amend his complaint

18  to allege claims based on particularized facts or special circumstances with respect to the Plan's

19  use of forfeitures.  The Court made clear that Plaintiff was not to simply replead claims based on

20  an impermissibly broad theory that it is *per se* a fiduciary breach to use participant money, rather

21  than forfeited employer contributions, to pay for administrative costs.  MTD Order 9-10.  But the

22  FAC does not plead any particularized facts or special circumstances.  It offers no new facts at

23  all—just a conclusory assertion that Defendants have "a conflict of interest in administering the

24  Plan and managing and disposing of its assets," coupled with a still incredibly broad theory that

25  using forfeited employer contributions to fund employer contributions rather than pay for Plan

26  administrative expenses is necessarily a fiduciary breach absent a risk that the employer is so on

27  the verge of financial collapse that it cannot satisfy its contribution obligations. FAC ¶ 28.  That

28  theory finds no support in ERISA's text or history, or in the settled understanding of the very

agencies with the responsibility to regulate ERISA-governed retirement plans.  Plaintiff's claims should be dismissed, this time with prejudice.

As this Court has previously recognized, ERISA was enacted to "protect contractually defined benefits" and to assure that employers, employees, and fiduciaries can "rel[y] on the face of written plan documents."  MTD Order 9 (quoting *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013)).  ERISA's fiduciary obligations do not operate in a way that forbids employers from obtaining "incidental" benefits under a plan document, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999), nor do they require plan fiduciaries "to maximize pecuniary benefits" enjoyed by participants or "resolve every issue of interpretation in favor of plan beneficiaries."  *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004); *accord Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998); *Rozo v. Principal Life Ins. Co.*, 48 F.4th 589, 598 (8th Cir. 2022); *Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989) ("Section 404 creates no exclusive duty of maximizing pecuniary benefits.  Under ERISA the fiduciaries' duties are found largely in the terms of the plan itself."); *see also* MTD Order 9-10.

Accordingly, when plan fiduciaries faithfully effectuate the promises contained in the plan document—which defines the rights, obligations, and expectations of the plan sponsor and plan participants alike—and there is no allegation that the plan's terms violate ERISA, then courts reject fiduciary-breach claims that fault fiduciaries for failing to pursue pecuniary benefits for participants that go beyond those promised by the plan.  *See, e.g.*, *Collins*, 144 F.3d at 1282 (rejecting fiduciary-breach claim based on failure of plan administrator to increase benefits when plan was overfunded, when the plan *permitted* the administrator to amend the plan to increase benefits but did not *require* the administrator to do so); *Wright*, 360 F.3d at 1100 (rejecting fiduciary-breach claim based on fiduciaries' failure to sell a higher percentage of employer securities than contemplated by the plan document in order to capture a price "premium," concluding that "because Defendants complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms, they provided Plaintiffs with their benefits due").  Neither of Plaintiff's new theories allow his complaint to proceed in light of these principles.

**A.      Plaintiff's risk-of-underfunding theory does not save his claims.**

Unlike in other forfeiture cases,[8] Plaintiff does not allege that plan fiduciaries violated the Plan document by allocating forfeited employer contributions, or that the Plan document itself violated ERISA.  Instead, the premise of Plaintiff's fiduciary-breach claims is that using forfeited employer contributions to reduce the administrative expenses participants pay is the *only* prudent and loyal choice—even where the Plan expressly allows forfeitures to be used to offset future employer contributions—"[a]bsent a risk that Clorox would be unable to satisfy its contribution obligations."  FAC ¶ 27.  This new theory is not based on "particularized facts" or "special circumstances" demonstrating that using forfeitures to reduce employer contributions, while generally lawful, was a fiduciary breach here under the unique facts and circumstances of this case.  MTD Order 10.

*First*, the theory is not "particularized" to this Plan at all—it would render the use of plan-authorized forfeitures for anything but reducing participant expenses a breach for nearly every plan, save only plans sponsored by employers that are on the verge of financial collapse, *i.e.*, a Lehman Brothers-type situation.  Indeed, Plaintiff's counsel has asserted identical new "allegations" in amended complaints filed against HP, Mattel, and Thermo Fisher, confirming that the allegations are not particularized as to any company, let alone Clorox.  *See* First Am. Compl. ¶ 25, *Hutchins v. HP Inc.*, No. 2:24-cv-02624 (July 17, 2024), ECF No. 56 ("HP FAC"); First Am. Compl. ¶ 26, *Prattico v. Mattel, Inc.*, No. 2:24-cv-02624-FMO (July 1, 2024), ECF No. 28 ("Mattel FAC"); Second Am. Compl. ¶ 30, *Dimou v. Thermo Fisher Scientific Inc.*, No. 3:23-cv-01732-TWR (Oct. 18, 2024), ECF No. 44 ("Thermo Fisher SAC").  And Plaintiff does not allege that he was promised or expected that he would receive free administrative services under the Plan.  Instead, although the Plan document expressly permitted forfeited employer contributions to be used to reduce existing or future employer contributions, his contention is that absent a risk that Clorox was in such dire financial straits that it would be unable to make all employer contributions required under the Plan, plan fiduciaries violated ERISA by failing to use those forfeitures to

---

[8] *See, e.g.*, *Rodriguez v. Intuit Inc.*, 2024 WL 3755367, at *5-*6 (N.D. Cal. Aug. 12, 2024).

1   ensure that he received administrative services for free.  FAC ¶¶ 42, 51, 59-60.

2          *Second*, this theory does not plausibly allege "special circumstances" that render using

3   plan-authorized forfeitures to reduce employer contributions unlawful.  Instead, it would invert

4   that burden, deeming the use of forfeitures to be a fiduciary breach by default, permissible only in

5   the event of special (and exceedingly unusual) circumstances—the plan sponsor's near collapse.  It

6   would therefore contravene the principle that ERISA does not prohibit otherwise lawful actions,

7   simply because they might have an incidental benefit to the employer.  *See Hughes Aircraft*, 525

8   U.S. at 445-446; *Lockheed Corp. v. Spink*, 517 U.S. 882, 892-893 (1996).

9          *Third*, this theory remains inconsistent with the text, structure, and purpose of ERISA,

10  which (as mentioned above) is aimed at ensuring that participants receive the benefits they are

11  promised, but does not provide a substantive right to free administrative expenses or any other

12  particular benefits.  *See supra* pp. __-__.  Under Plaintiff's essential theory, ERISA would create a

13  substantive right to free administrative expenses any time employees separate from their

14  employment before they are fully vested—just now with the small wrinkle that the rule holds

15  absent an unusual situation in which the employer is on the verge of financial collapse.  To be

16  sure, employers who sponsor plans *could* guarantee that participants will receive free

17  administrative expenses or that forfeitures will be used to lower participant costs.  And if a plan

18  sponsor does so, and plan fiduciaries act inconsistently with those guarantees, they could be held

19  liable for a fiduciary breach.  But that type of provision should not be created by operation of law

20  through general fiduciary provisions intended only to ensure the receipt of *promised* benefits.  *See*

21  *Hutchins*, 2024 WL 3049456, at *6.

22         *Fourth*, Plaintiff's theory simply makes no sense.  If an employer does not have sufficient

23  assets to satisfy its funding obligations for a plan, then it can be held liable for failing to honor its

24  contractual obligations, and if a plan trustee fails to take action to obtain those promised

25  contributions, then *that* could be a fiduciary breach.  *See Collins*, 144 F.3d at 1283.  But nothing

26  about those circumstances changes whether forfeitures may be used consistently with the terms of

27  a plan document.

28         At bottom, there is no support for Plaintiff's revised breach theory, which is effectively as

---

Defendants' Notice of Motion and Motion to          Case No. 4:23-CV-05325-YGR
Dismiss Amended Class Action Complaint

12

1 | categorical as the original theory this Court previously rejected.  It therefore fails for the same

2 | reasons.

3 |     **B.    Plaintiff's conclusory conflict-of-interest assertions do not save his claims.**

4 |         Plaintiff's "conflict of interest" allegations also do not render his claims any more

5 | plausible than the claims this Court previously rejected.  As an initial matter, they are not factual

6 | allegations at all.  The FAC states: "In deciding between using forfeitures to benefit Clorox or

7 | using forfeitures to benefit the participants, Defendants are presented with a conflict of interest in

8 | administering the Plan and managing and disposing of its assets."  FAC ¶ 28; *see also* FAC ¶ 52

9 | ("In making this decision, Defendants had a conflict of interest and were motivated primarily or

10 | exclusively by Clorox's own self-interest rather than the interests of the Plan's participants and

11 | beneficiaries, which Defendants failed to consider.").  That is all—the FAC includes no factual

12 | heft whatsoever, but rather only the naked assertion that a conflict of interest exists.  This is the

13 | very definition of an allegation that is "merely conclusory" and that therefore need not be accepted

14 | as true and is insufficient to support a plausible claim for relief.  *See In re Gilead Scis. Sec. Litig.*,

15 | 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted); *see also Partida v. Schenker, Inc.*, 2024

16 | WL 1354432, at *8-9 (N.D. Cal. Mar. 29, 2024) (dismissing disloyalty claim based on

17 | "conclusory allegations that the Plan fiduciaries acted 'in their own self interest'" or had "conflicts

18 | of interest").

19 |         To the extent this conclusory allegation is based on the failure to retain an independent

20 | fiduciary to effectuate the Plan's forfeiture provision, FAC ¶ 31, that does not render the theory

21 | plausible because ERISA expressly provides for the common practice of allowing corporate

22 | officers to serve as fiduciaries of their plans.  *See* 29 U.S.C. § 1108(c)(3) ("Nothing in section

23 | 1106 of this title shall be construed to prohibit any fiduciary from serving as a fiduciary in

24 | addition to being an officer, employee, agent, or other representative of a party in interest.");

25 | *Wright*, 360 F.3d at 1093 (a fiduciary need "not be an independent party; the employer or plan

26 | sponsor may appoint its own "officer, employee, agent, or other representative" to serve in a

27 | fiduciary capacity).  As the Supreme Court has noted, ERISA intentionally deviates from the

28 | common law in this regard—while under trust law a trustee "is not permitted to place himself in a

---

Defendants' Notice of Motion and Motion to          Case No. 4:23-CV-05325-YGR
Dismiss Amended Class Action Complaint

position where it would be for his own benefit to violate his duty to the beneficiaries," "[u]nder ERISA, however, a fiduciary may have financial interest adverse to beneficiaries." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).[9]

Furthermore, this type of conflict-of-interest allegation is not particularized, nor does it represent a special circumstance—given the ubiquity of appointing officers or employees of a plan sponsor to serve as plan fiduciaries, as ERISA expressly contemplates, this type of conclusory allegation could also be offered in every case. Indeed, Plaintiff's counsel does precisely that in the amended complaints filed against HP, Mattel, and Thermo Fisher. *See* HP FAC ¶¶ 26, 27, 29, 54; Mattel FAC ¶¶ 27, 28, 30, 54; Thermo Fisher SAC ¶¶ 31-32, 34, 58.

Finally, this type of disloyalty theory implicitly assumes that fiduciaries have a duty to maximize pecuniary benefits at every turn. But as discussed previously, ERISA does not create an exclusive duty to "maximize pecuniary benefits" for participants, *see Collins*, 144 F.3d at 1282; *Wright*, 360 F.3d at 1100; it requires fiduciaries to discharge their duties for the "exclusive purpose" of both "(i) providing benefits to participants and their beneficiaries," and "(ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Here, Defendants did exactly that—they used forfeited employer contributions to "provid[e] benefits to participants," just as ERISA requires. *Id.* Nothing in Plaintiff's conclusory conflict-of-interest allegations renders his fiduciary-breach theory plausible.

\*       \*       \*       \*

While ERISA's text, structure, and purpose, along with the long-settled understanding of both Congress and the Treasury Department, are sufficient to dispose of Plaintiff's claims, the practical ramifications of Plaintiff's theory of breach should not be lost here. Forfeitures exist

---

[9] To the extent Plaintiff intends to rely on his allegation that Clorox lacked a prudent and reasoned decisionmaking process, *e.g.*, FAC ¶ 58, that allegation do not salvage his claims either. To start, these allegations are not new—they were present in Plaintiff's original complaint, which this Court concluded was insufficient to state a claim. Compl. ¶ 47. Second, much like Plaintiff's conflict-of-interest allegations, his flawed-process allegations are wholly conclusory—Plaintiff alleges no facts about any fiduciary process but rather simply offers the naked assertion that whatever process existed, it was insufficient. And third, these allegations erroneously presume that plan fiduciaries are required to weigh whether participants should receive unpromised benefits and that the failure to do so is a process breach—a premise that is fundamentally flawed for the reasons described above.

1    *only* with respect to *employer* contributions, not employee contributions, which vest immediately.

2    Employer contributions are never *required* under ERISA—plan sponsors can choose whatever

3    level of benefits they wish, including by funding retirement-plan benefits *exclusively* with

4    employee contributions.  And here, the employer contributions at issue pertain to funds

5    contributed *entirely by Clorox*, without requiring any employee contributions whatsoever.  If

6    courts construe ERISA in a way that hamstrings employers' ability to control forfeited employer

7    contributions when employees depart before vesting, contrary to the long-settled understanding of

8    what federal law permits, employers will have little incentive either to offer these types of

9    exclusively employer-funded plans or to make these types of employer contributions.  That would

10   run directly contrary to Congress's aims in crafting ERISA, which was "to create a system that is

11   [not] so complex that administrative costs, or litigation expenses, unduly discourage employers

12   from offering [ERISA] plans in the first place."  *Conkright v. Frommert*, 559 U.S. 506, 517 (2010)

13   (citation omitted).

14        Plaintiff does not and cannot dispute that Clorox provided millions upon millions of dollars

15   in employer contributions that are not compelled by ERISA at all, based on a Plan that allocates

16   administrative expenses to participants and beneficiary.  What Plaintiff continues to seek through

17   this lawsuit, though, is for Clorox to be forced to provide *more* in contributions so that participants

18   can receive administrative services for free or at a reduced cost—which is not what they were

19   promised or what they expected.  Plaintiff is not seeking to vindicate participant rights to promised

20   benefits under ERISA or under the Plan, he is seeking a windfall; but the aim of ERISA is "not to

21   give [plaintiffs] a windfall."  *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006)

22   (Sotomayor, J.).

23   **V.    Conclusion**

24        For the foregoing reasons, the FAC should be dismissed with prejudice.

25

26

27

28

1    Dated:  December 10, 2024                    Respectfully submitted,

2                                                By: */s/ James O. Fleckner*

3                                                James O. Fleckner (*pro hac vice*)
                                                *jfleckner@goodwinlaw.com*

4                                                David Rosenberg (*pro hac vice*)
                                                *drosenberg@goodwinlaw.com*

5                                                **GOODWIN PROCTER** LLP

6                                                100 Northern Avenue
                                                Boston, Massachusetts 02210

7                                                Telephone:  617-570-1000
                                                Facsimile:  617-523-1231

8
                                                Jaime A. Santos
9                                                **GOODWIN PROCTER** LLP

10                                               1900 N Street, N.W.
                                                Washington, D.C. 20036

11                                               Telephone:  202-346-4000
                                                Facsimile:  202-346-4444

12
                                                BRETT SCHUMAN (SBN 189247)
13                                               *BSchuman@goodwinlaw.com*
                                                **GOODWIN PROCTER** LLP

14                                               Three Embarcadero Center
                                                San Francisco, California 94111

15                                               Tel.:  415-733-6000
                                                Fax:  415-677-9041

16
                                                *Attorneys for Defendants*
17                                               THE CLOROX COMPANY; THE EMPLOYEE
                                                BENEFITS COMMITTEE OF THE CLOROX
18                                               COMPANY 401(k) PLAN

19

20

21

22

23

24

25

26

27

28

---

Defendants' Notice of Motion and Motion to                    Case No. 4:23-CV-05325-YGR
Dismiss Amended Class Action Complaint

16

1

## CERTIFICATE OF SERVICE

2      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

3  United States District Court for the Northern District of California by using the CM/ECF system

4  on December 10, 2024.  I further certify that all participants in the case are registered CM/ ECF

5  users and that service will be accomplished by the CM/ECF system.

6      I certify under penalty of perjury that the foregoing is true and correct. Executed on

7  December 10, 2024.

8                                          */s/ James O. Fleckner*
                                          James O. Fleckner

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28