1 | BRETT SCHUMAN (SBN 189247)
  | *BSchuman@goodwinlaw.com*
2 | **GOODWIN PROCTER LLP**
  | Three Embarcadero Center
3 | San Francisco, California 94111
  | Tel.: 415-733-6000
4 |
5 | JAMES O. FLECKNER (*pro hac vice*)
  | *jfleckner@goodwinlaw.com*
  | DAVID ROSENBERG (*pro hac vice*)
6 | *drosenberg@goodwinlaw.com*
  | **GOODWIN PROCTER LLP**
7 | 100 Northern Avenue
  | Boston, MA 02210
8 | Tel.: 617-570-1000

9 | JAIME A. SANTOS (SBN 284198)
  | *jsantos@goodwinlaw.com*
10 | **GOODWIN PROCTER LLP**
   | 1900 N Street, N.W.
11 | Washington, DC 20036
   | Tel: 202-346-4000
12 |
13 | Attorneys for Defendants
   | THE CLOROX COMPANY; THE EMPLOYEE
   | BENEFITS COMMITTEE OF THE CLOROX
14 | COMPANY 401(k) PLAN

15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| JAMES MCMANUS,<br><br>        Plaintiff,<br><br>    v.<br><br>THE CLOROX COMPANY; THE EMPLOYEE BENEFITS COMMITTEE OF THE CLOROX COMPANY 401(k) PLAN; and DOES 1 to 10 inclusive,<br><br>        Defendants. | Case No. 4:23-CV-05325-YGR<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED R. CIV. P. 12(B)(6)**<br><br>Date:        February 11, 2025<br>Time:        2:00 p.m.<br>Courtroom:  1 – 4th Floor<br>Judge:       Hon. Yvonne Gonzalez Rogers<br><br>Am. Complaint filed:    November 12, 2024 |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    I.    Plaintiff does not meaningfully dispute the lack of new well-pleaded *factual* allegations plausibly suggesting disloyalty or imprudence. ...................................... 3

    II.    Plaintiff's third interpretation of ERISA's fiduciary provisions is just as impermissibly broad as his original theory. ............................................................... 4

    III.    Plaintiff's new theory squarely contradicts his prior arguments and representations. ................................................................................................................ 8

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Collins v. Pension & Ins. Comm. of S. Cal. Rock Prod. & Ready Mixed Concrete Associations*,
    144 F.3d 1279 (9th Cir. 1998) .................................................................................... 3, 5, 8

*Est. of Ellingson v. Comm'r*,
    964 F.2d 959 (9th Cir. 1992) .............................................................................................. 6

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) ........................................................................................................ 3, 5

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989) ............................................................................................................ 6

*Foltz v. U.S. News & World Rep., Inc.*,
    865 F.2d 364 (D.C. Cir. 1989) ............................................................................................ 5

*Henry v. Champlain Enters., Inc.*,
    445 F.3d 610 (2d Cir. 2006) ................................................................................................ 2

*Hutchins v. HP Inc.*,
    737 F. Supp. 3d 851 (N.D. Cal. 2024) ................................................................................ 5

*Pilkington PLC v. Perelman*,
    72 F.3d 1396 (9th Cir. 1995) .............................................................................................. 8

*Rozo v. Principal Life Ins. Co.*,
    48 F.4th 589 (8th Cir. 2022) ................................................................................................ 5

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) .................................................................................... 3, 4, 5

**Statutes**

29 U.S.C. § 1002(14)(A) .............................................................................................................. 4

29 U.S.C. § 1104(a)(1)(A) ............................................................................................................ 5

29 U.S.C. § 1108(c)(3) .................................................................................................................. 4

**Other Authorities**

88 Fed. Reg. 12282 (Feb. 27, 2023) .............................................................................................. 7

Dep't of the Treasury, Internal Rev. Serv., *Retirement News for Employers* 4-5,
   Publication 4278-B (May 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf ......................... 7

*Forfeitures*, Internal Revenue Manual (Feb. 16, 2017),
   https://www.irs.gov/irm/part7/irm_07-012-001#idm139730277532416 ................................. 7

H.R. Rep. No. 99-841, Vol. II (1986) ....................................................................................... 7

Restatement (Second) of Trusts § 4, Comment *d* (1959) .................................................... 6

# INTRODUCTION[1]

Plaintiff's shallowly amended FAC suffers from the same deficiencies that this Court identified previously—an overly broad interpretation of ERISA that departs from nearly four decades of settled rules regarding defined-contribution plans understood by Congress, the Treasury Department, and plans across the country.

Plaintiff asked to amend so he could add new *factual* allegations plausibly suggesting disloyal or imprudent conduct. MTD Tr. 5. This Court permitted Plaintiff to do so but made clear that it did not agree that ERISA's fiduciary duties *require* retirement plan fiduciaries to use forfeited employer contributions to pay for administrative costs rather than to fund participant benefits. Plaintiff proceeded to amend his pleading, but as Defendants' motion to dismiss pointed out, the FAC's theory of breach is still in substance just as broad as the one this Court previously rejected: it asserts that ERISA requires retirement plan fiduciaries to use forfeitures to pay for administrative costs absent a vanishingly rare situation in which the plan sponsor is in such dire financial straits that it will default on its contribution obligations. Moreover, the FAC offers no new *facts* at all. Instead, it provides only new conclusory statements and legal assertions.

Critically, Plaintiff's opposition does not meaningfully dispute any of this. Instead, Plaintiff largely abandons his risk-of-default theory and pivots to still a *third* theory of breach: that ERISA's fiduciary provisions do not *always* require forfeitures to be used to provide participants with free or highly subsidized plan services, but they compel that outcome where the plan document gives fiduciaries flexibility about how to allocate forfeited employer contributions.

There are numerous problems with Plaintiff's approach—even putting aside the fact that it indicates the FAC is really just a thinly veiled motion for reconsideration. Plaintiff tries to suggest that his current theory is narrow because it applies only when a plan document gives fiduciaries discretion. But if Plaintiff's rule kicks in whenever a defendant is acting as a fiduciary, that is just another way of saying that ERISA's fiduciary provisions *require* Plaintiff's preferred forfeiture-

---

[1] This brief uses the same abbreviations or defined terms used in Defendants' motion to dismiss ("MTD"). Plaintiff's opposition brief is abbreviated "Opp." The transcript from this Court's October 29, 2024 motion to dismiss hearing is abbreviated "MTD Tr."

| Defendants' Reply In Support of Their Motion to Dismiss Class Action Complaint | Case No. 4:23-CV-05325-YGR |
|---|---|

1

allocation outcome—an argument this Court already rejected.  Moreover, this theory once again means that fiduciary "choice" under Plaintiff's interpretation is a one-way ratchet: once discretion over forfeitures is granted, it can be exercised in only one way—to pay for administrative expenses, a benefit that participants were never promised and do not expect to receive.  That makes no sense and, again, is precisely the type of overly broad theory this Court previously rejected.

This theory also raises eyebrows because it contradicts Plaintiff's prior representations to this Court.  Plaintiff previously argued *at length* that under binding Supreme Court precedents, ERISA's fiduciary duties trump the terms of a plan document and therefore fiduciaries who decline to use forfeitures to subsidize administrative expenses "cannot hide behind the plan terms to immunize [their] decision-making from ERISA scrutiny."  ECF No. 27, at 24-26.  Now, Plaintiff says that plan sponsors *can* write their plans to forbid fiduciaries from using forfeitures to subsidize administrative expenses and then fiduciaries are immune from suit, but if plan sponsors instead write their plans using the same language the Treasury Department has used for decades, then ERISA's fiduciary provisions operate to give beneficiaries a substantive right to free or highly subsidized administrative services.  Opp. 9-10.  That is as wrong as it sounds.  A theory that requires Plaintiff to contradict his prior representations about how ERISA works is not a principled theory at all—and certainly not one grounded in ERISA's text, structure, and congressional objectives.

As this Court has already recognized,  ERISA's objective is to ensure that plan participants are provided with the benefits they were promised "and to assure reliance on the face of written plan documents," MTD Order 9 (citation omitted), "not to give [plaintiffs] a windfall," *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) (Sotomayor, J.).  Plaintiff does not dispute that he received *exactly* what he was promised under the Plan, and nothing in ERISA required the Clorox Plan fiduciaries to find ways to expand his benefits beyond what he was promised or expected to receive.  This Court should dismiss Plaintiff's FAC with prejudice.

# ARGUMENT

**I.    Plaintiff does not meaningfully dispute the lack of new well-pleaded *factual* allegations plausibly suggesting disloyalty or imprudence.**

Defendants offered two simple arguments for why dismissal is required  First, the risk-of-underfunding theory advanced in the FAC is just as impermissibly broad as the categorical theory of breach this Court already rejected. MTD 11-13. Second, Plaintiff's FAC offered no "particularized facts or special circumstances" plausibly suggesting fiduciary malfeasance as this Court's prior order instructed (MTD Order 10), and instead offered only conclusory allegations of imprudence or "conflicts of interest" (MTD 13-15).

Plaintiff's opposition does not meaningfully contest either argument. As to the first argument, Plaintiff's opposition effectively *abandons* the FAC's risk-of-underfunding theory rather than defends it. His opposition offers no argument whatsoever for why the risk of a plan sponsor's default modifies the operation of ERISA's fiduciary provisions. Instead, it offers yet another new theory, which is not found in Plaintiff's original complaint *or* the FAC—that Clorox's mistake was in not writing the Plan document in a way that would forbid Plan fiduciaries from having any flexibility about how to allocate forfeited employer contributions. Opp. 9-10.

As to the second argument, Plaintiff's opposition again offers no substantive response. Instead, Plaintiff simply recites the conclusory allegations included in the FAC without even *attempting* to argue that they contain well-pleaded *facts* rather than labels and conclusions. *Compare* FAC ¶¶ 26-28, 58 (conclusory allegations), *with* Opp. 3, 8 (reciting same). Indeed, rather than point to any well-pleaded facts in support of his claims, he suggests that prudence and disloyalty claims are inherently fact-intensive, and so as long as an ERISA plaintiff asserts an imprudent or disloyal process in conclusory terms, the claims are unsuitable for resolution on a motion to dismiss. Opp. 7 (loyalty claim "cannot be resolved on a motion to dismiss"); Opp. 8 ("rarely" appropriate to resolve a prudence claim "prior to trial"). One need look no further than this Court's prior order *dismissing Plaintiff's prudence and loyalty claims* to see that this argument is a non-starter. *See also Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004)

1    (affirming dismissal of fiduciary-breach claims).  Indeed, it completely ignores the Supreme
2    Court's directive that the Rule 12(b)(6) motion is an "important mechanism for weeding out
3    meritless claims" asserting a breach of ERISA's fiduciary provisions.  *Fifth Third Bancorp v.*
4    *Dudenhoeffer*, 573 U.S. 409, 425 (2014).
5         The lack of well-pleaded facts in Plaintiff's "conflict of interest" allegations is particularly
6    conspicuous because "flesh[ing] out … the conflict of interest issue" was the *sole basis* Plaintiff
7    offered at this Court's prior hearing for wanting an opportunity to file an amended complaint.
8    MTD Tr. 5.  But the FAC's conclusory assertion that Plan fiduciaries were "conflicted" seems to
9    be based entirely on the fact that they were employees or officers of Clorox, the plan sponsor.
10   FAC ¶¶ 28, 31-32; Opp. 3.  As Defendants' motion to dismiss pointed out, however, and as the
11   Ninth Circuit has recognized, ERISA *expressly permits* a plan sponsor's officers and employees to
12   serve as plan fiduciaries.  MTD 13; 29 U.S.C. § 1002(14)(A); *id.* § 1108(c)(3); *Wright*, 360 F.3d at
13   1093.  Plaintiff's suggestion that Defendants should have appointed an independent fiduciary to
14   avoid a fiduciary-breach claim would completely nullify those express statutory provisions.
15   Again, Plaintiff offers no response.
16        Plaintiff's complete failure to address these arguments or point to any well-pleaded new
17   *facts* plausibly supporting his claims is reason enough to grant Defendants' motion.  Indeed, the
18   fact that Plaintiff's brief points to no new allegations but rather pivots to a yet a third *legal* theory
19   of breach strongly suggests that Plaintiff's FAC is not an amended *complaint* at all; instead, it is a
20   motion for reconsideration improperly framed as a complaint.  In any event, Plaintiff's new breach
21   theory fails on its own terms for the reasons described below.

22   **II.    Plaintiff's third interpretation of ERISA's fiduciary provisions is just as
23           impermissibly broad as his original theory.**

24        Plaintiff does not substantively dispute that the risk-of-default theory of fiduciary breach
25   advanced in the FAC would still interpret ERISA's fiduciary provisions to effectively forbid what
26   ERISA plans expressly permit—the use of forfeitures to pay plan benefits—and what Congress
27   and the Treasury Department have long understood is lawful and common practice.  MTD 3, 4, 6,
28

1   7 n.7. Instead, he pivots to a new theory that he suggests is much more modest: he contends that it
2   is perfectly acceptable for a plan sponsor to "require[e]" fiduciaries to apply forfeitures to
3   employer contributions, and Clorox "could amend the Plan" to reach that outcome.  Opp. 9-10.
4   But if the plan document gives fiduciaries a *choice* about how to allocate forfeitures, ERISA's
5   fiduciary duties of prudence and loyalty require that choice to be exercised in a way that provides
6   participants with more benefits than the Plan promised them.  *Id.*

7       That theory fails for the same reason this Court rejected Plaintiff's claims the first time
8   around: it would interpret ERISA's fiduciary duties as going beyond "protect[ing] contractually
9   defined benefits" (MTD Order 9) and instead would improperly require fiduciaries "to maximize
10  pecuniary benefits" enjoyed by participants and "resolve every issue of interpretation in favor of
11  plan beneficiaries."  *Wright*, 360 F.3d at 1100; *accord Collins v. Pension & Ins. Comm. of S. Cal.*
12  *Rock Prod. & Ready Mixed Concrete Associations*, 144 F.3d 1279, 1282 (9th Cir. 1998); *Rozo v.*
13  *Principal Life Ins. Co.*, 48 F.4th 589, 598 (8th Cir. 2022); *Foltz v. U.S. News & World Rep., Inc.*,
14  865 F.2d 364, 373 (D.C. Cir. 1989) ("Section 404 creates no exclusive duty of maximizing
15  pecuniary benefits.  Under ERISA the fiduciaries' duties are found largely in the terms of the plan
16  itself.").  And Plaintiff's reassurance that his rule kicks in only when fiduciary duties attach is no
17  limitation at all—the case law this Court relied upon in previously rejecting Plaintiff's theory of
18  breach as impermissibly broad *were about the scope of ERISA's fiduciary duties*.  *See* MTD Order
19  9-10 (citing *Collins*, 144 F.3d at 1282, and *Dudenhoeffer*, 573 U.S. at 425).  The same is true of
20  the case law Judge Freeman relied on in *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal.
21  2024) (collecting authorities).

22      Moreover, Plaintiff's theory would make the grant of fiduciary discretion a one-way
23  ratchet: under that theory, if a plan document were to provide fiduciaries with a *choice* about how
24  to allocate forfeited employer contributions (*e*to pay plan benefits or to pay plan expenses),
25  ERISA's fiduciary obligations would automatically nullify that choice by requiring the fiduciaries
26  to allocate forfeitures to pay plan expenses because that decision would maximize the benefits
27  participants receive.  Opp. 10.  That makes no sense as a matter of statutory interpretation—
28

Defendants' Reply In Support of Their Motion to Dismiss Class Action Complaint     Case No. 4:23-CV-05325-YGR

5

particularly not when paying plan benefits is one of the *specifically enumerated* appropriate uses of plan assets in ERISA itself, 29 U.S.C. § 1104(a)(1)(A).

Plaintiff resists this common-sense understanding, contending that ERISA *does* require fiduciaries to "maximize retirement savings when managing plan assets." Opp. 10 (capitalization altered). But the cases Plaintiff relies on address duties imposed on fiduciaries when they *manage plan investments held in participants' individual retirement accounts*. The whole point of plan investments is to fund participants' retirements, and so managing those assets to maximize retirement savings *is* "protect[ing] contractually defined benefits." MTD Order 9. Those cases say nothing about how fiduciaries must allocate employer contributions that were effectively abandoned by departing employees, much less about whether fiduciaries must look for ways to *expand* participant benefits beyond what a plan provides and what participants expect to receive.

Plaintiff also contends that it is irrelevant that Defendants applied forfeitures in a way that is specifically enumerated in ERISA—to fund plan benefits—because ERISA additionally requires fiduciaries to act solely in participants' interests, rather than out of self interest or some other improper motivations. Opp. 12-13. But using forfeited contributions to pay benefits as specifically permitted under the Plan document *is* acting in the interests of participants. And in any event, Plaintiff offers no well-pleaded *factual* allegations that Plan fiduciaries were acting out of self interest or improper motivation—as noted above, Defendants' motion explained that Plaintiff's allegations of improper motivation were wholly conclusory, and Plaintiff's opposition offered no rejoinder to that argument. *See supra* p. 3-4.

Ultimately, the role of an ERISA fiduciary, much like the role of a common-law trustee, is to effectuate the settlor's intent. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) (quoting Restatement (Second) of Trusts § 4, Comment *d* (1959)); *see also Est. of Ellingson v. Comm'r*, 964 F.2d 959, 963, 965 (9th Cir. 1992). Plaintiff does not attempt to argue that Clorox's intent here was for Plan participants to receive free or highly subsidized administrative services. To the contrary, Plaintiff implicitly assumes the opposite—he affirmatively acknowledges that Plan participants understand they would bear the costs of administrative expenses through

| Defendants' Reply In Support of Their Motion to Dismiss Class Action Complaint | Case No. 4:23-CV-05325-YGR |

6

quarterly deductions from their individual accounts (FAC ¶ 23) and points out that Clorox "could amend the Plan to require that forfeitures be used to reduce Clorox's contributions" and achieve precisely the outcome Defendants seek here (Opp. 9-10). In other words, he suggests that plan fiduciaries *were* effectuating Clorox's intent and that the problem is inartful drafting—that by echoing the language that the Treasury Department and Congress have used for many years to make clear that forfeitures can lawfully be used to reduce employer contributions *or* to pay administrative expenses,[2] Clorox inadvertently hamstrung Plan fiduciaries' authority to use forfeitures in that very manner. Again, that makes no sense as an interpretation of ERISA or of the Plan document.

There are good reasons why a plan sponsor might give plan fiduciaries responsible for allocation forfeitures this kind of flexibility (rather than dictating that all forfeitures be used for employer contributions)—and good reasons why plan fiduciaries would reasonably interpret this language *not* to compel them to provide participants with benefits they have not been promised and do not expect to receive. Most importantly, this type of flexibility is necessary because retirement plans governed by the Tax Code (which all ERISA plans are) have long understood that they *are not permitted* to keep unallocated forfeitures sitting in plans; instead, the Treasury Department instructs plans that they are required to use or allocate forfeitures "in the plan year incurred," or else they can lose their "qualified" status (*i.e.*, their eligibility for significant tax breaks). Treasury Department, *Retirement News* 4. Depending on how many employees leave in a given year before their benefits vest, what the current employer contribution levels are, when forfeitures arise, when employer contributions are made, and when administrative expenses are due, it may make more sense to use forfeitures to fund administrative expenses than fund employer contributions—particularly since many plan sponsors, including Clorox, often pay *some* administrative expenses. MTD 4 (citing Plan's public filings). Nothing in ERISA compels plan

---

[2] *See, e.g.*, Dep't of the Treasury, Internal Rev. Serv., *Retirement News for Employers* 4-5, Publication 4278-B (May 2010), https://www.irs.gov/pub/irs-pdf/p4278.pdf ("Treasury Department, *Retirement News*"); *Forfeitures*, Internal Revenue Manual § 7.12.1.9 (Feb. 16, 2017), https://www.irs.gov/irm/part7/irm_07-012-001#idm139730277532416; H.R. Rep. No. 99-841, Vol. II at 442 (1986); *see also* 88 Fed. Reg. 12282, 12283 (Feb. 27, 2023).

1  fiduciaries to read this discretion-conferring language to *eliminate* flexibility and instead impose a
2  duty to enhance participant benefits beyond what they are promised in the Plan document—
3  particularly when there is every indication that the Plan sponsor intended exactly the opposite. *See*
4  MTD Order 9 (ERISA does not "require a fiduciary to resolve every issue of interpretation in
5  favor of plan beneficiaries" (citing *Collins*, 144 F.3d at 1282)).[3] Accordingly, Plaintiff's new
6  theory of breach is just as implausible as the theory this Court previously rejected.

### III. Plaintiff's new theory squarely contradicts his prior arguments and representations.

Although Plaintiff's inadequate pleading and the implausibility of his fiduciary-breach theory are sufficient to dismiss his claims with prejudice, one last point bears mention: Plaintiff's opposition is completely irreconcilable with the prior arguments and representations Plaintiff made to this Court in his opposition to Defendants' first motion to dismiss. At minimum, that makes this new theory immediately suspect.

As noted above, Plaintiff's opposition brief seeks to reassure the Court that Plaintiff's theory is modest—that plan sponsors can write plan documents to use forfeitures in whatever way they wish, and if they do so ERISA's fiduciary provisions impose no limits on the use of forfeitures. But if plan sponsors write their plan documents to allow plan fiduciaries to allocate forfeitures *either* toward employer contributions *or* toward administrative expenses, Plaintiff says, ERISA's fiduciary provisions require forfeitures to be used to lower participant costs and increase participant benefits. Opp. 9-10. In opposing Defendants' first motion to dismiss, though, Plaintiff said essentially the opposite. He argued that, "[b]y statute, the Committee had a fiduciary duty to defray the Plan's expenses," that the terms of a plan "cannot override" those fiduciary duties, and that the Supreme Court's decision in *Dudenhoeffer* "h[olds] that fiduciaries *are* obligated to deviate from plan terms where necessary to comply with their fiduciary duties." ECF No. 27, at

---

[3] *Pilkington PLC v. Perelman*, 72 F.3d 1396 (9th Cir. 1995), which Plaintiff cites (at 13) does not support Plaintiff's broad argument. The plaintiffs in *Pilkington* alleged that plan fiduciaries had spent the assets allocated to fund participants' retirement on an unwise and risky annuity product that ultimately failed, and did so in order to save the plan sponsor money—*i.e.*, they deprived the participants of the benefits they had been promised. *Id.* at 1396-1397. *Pilkington* does not suggest, much less hold, that plan fiduciaries must interpret and apply plan provisions to provide participants with *more* benefits than they were promised or expect.

24 (plan fiduciaries "cannot hide behind the plan terms to immunize [their] decision-making from ERISA scrutiny" (citation omitted)).

Plaintiff's about face extends to his characterizations of Ninth Circuit precedent—in particular, the Ninth Circuit's opinion in *Wright*, which held that ERISA's fiduciary obligations do not compel plan fiduciaries to pursue benefits for participants that exceed those promised by the plan. 360 F.3d at 1100. In Plaintiff's earlier opposition brief, he argued that *Wright* should be disregarded in light of the Supreme Court's subsequent decision in *Dudenhoeffer*, which he said "held that the duty of prudence trumps the instructions of a plan document." ECF No. 27, at 25 (quotation marks omitted)). But now, he sings a different tune—he does not contest that *Wright* is good law but instead argues that it "is simply not implicated here" because it applies only where an ERISA plaintiff is faulting a fiduciary for failing to *violate* a plan document, and not where a plan document gives fiduciaries options. Opp. 11.

In some ways, it does not even matter whether Plaintiff's characterizations of ERISA were right then or whether they are right now—the fact that his new theory requires him to disavow his old arguments should raise eyebrows. A theory that requires Plaintiff to contradict his prior representations about ERISA's text and structure is not a principled theory at all.

\* \* \* \*

At bottom, under Plaintiff's new theory his claims boil down either to the proposition that the plan was either drafted inartfully, or that ERISA's fiduciary provisions *require* fiduciaries to look for ways to increase employee benefits beyond what was promised whenever the plan sponsor gives them flexibility about how to use forfeited employer contributions. Neither is a viable theory of a breach of ERISA's fiduciary duties of prudence and loyalty. And neither offers the type of particularized facts of disloyalty or specialized circumstances regarding the fiduciaries' actions that the Court said would be required to sustain Plaintiff' claims.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's FAC should be dismissed with prejudice.

Dated: January 24, 2025

Respectfully submitted,

By: */s/ Jaime A. Santos*
Jaime A. Santos (SBN 284198)
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, D.C. 20036
Telephone: 202-346-4000
Facsimile: 202-346-4444

James O. Fleckner (*pro hac vice*)
*jfleckner@goodwinlaw.com*
David Rosenberg (*pro hac vice*)
*drosenberg@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: 617-570-1000
Facsimile: 617-523-1231

BRETT SCHUMAN (SBN 189247)
*BSchuman@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: 415-733-6000
Fax: 415-677-9041

*Attorneys for Defendants*
THE CLOROX COMPANY; THE EMPLOYEE BENEFITS COMMITTEE OF THE CLOROX COMPANY 401(k) PLAN

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on January 24, 2025. I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on January 24, 2025.

*/s/ Jaime A. Santos*
Jaime A. Santos